UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CAROLYN DAVIS, et al.,                )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )   Civil Action No.: 07-1302 (RCL)
                                      )
THE ISLAMIC REPUBLIC OF IRAN, et al,  )
                                      )
    Defendants.                       )
_____)

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNT CCIV**
**(Children of Orval Hunt)**

This action is brought pursuant to 28 U.S.C. § 1605A by Jack Hunt, Mendy Radyshewsky (nee Hunt) and Molly Wald (nee Hunt).[1] Each seeks solatium damages for injuries sustained by their father, Marine Orval Hunt on October 23, 1983 as a result of the terrorist bombing at the United States Marine Barracks in Beirut, Lebanon. In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule of Civil Procedure 53, the Special Master has received both testimonial and documentary evidence with respect to damages from the witnesses identified below.

Background

Shortly after dawn on October 23, 1983, a Mercedes truck filled with 2,500 pounds of explosives broke through a series of steel fences and sandbag barricades and ripped through the heart of the Marines' administrative headquarters building. That building, nicknamed the BLT, housed nearly 400 members of Battalion Landing Team 1/8 and attached Marines, sailors and soldiers. The explosion collapsed all four floors of the BLT, leaving a crater 30 feet deep and 40

---

[1] Another daughter, Marcy Duff (nee Hunt) is listed as a plaintiff in the Complaint however her testimony was not submitted for the Special Master's review.

feet wide and killing 241 servicemen and wounding 81 others. It represented the deadliest single-day death toll for the United States Marine Corps since the Battle of Iwo Jima and the deadliest single-day death toll for the United States military since January 21, 1968, the first day of the Tet Offensive during the Vietnam War. The Beirut bombing remains the deadliest post-World War II attack on Americans overseas.

The events of that day and its aftermath have been amply documented and will not be repeated except as relevant to an assessment of individuated damages. *See, e.g.*, Glenn E. Dolphin, 24 MAU 1983: A MARINE LOOKS BACK AT THE PEACEKEEPING MISSION TO BEIRUT, LEBANON (2005); Eric Hammel, THE ROOT: THE MARINES IN BEIRUT AUGUST 1982 – FEBRUARY 1984 (1999). Similarly, the historical overview of the statutory scheme by which claimants have brought actions against the Islamic Republic of Iran has been exhaustively recounted in numerous opinions issued by this and other Courts, most notably, *In re: Islamic Republic of Iran Terrorism Litigation*, 659 F.Supp.2d 31 (D.D.C. 2009), as well as in the U.S. Congressional Research Service's SUITS AGAINST TERRORIST STATES BY VICTIMS OF TERRORISM (RL31258, August 8, 2008) by Jennifer Elsea, obviating the need for recapitulation.

Procedural History

This Court has repeatedly found defendants Islamic Republic of Iran and its Ministry of Information and Security legally responsible for providing material financial and logistical support to help carry out the attack on the servicemen in Beirut. *See, e.g.*, *Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 110 (D.D.C. 2007); *Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46, 61 (D.D.C. 2003). In these opinions, the Court also determined that the family members of those victimized by the bombing have suffered and will continue to suffer mental anguish and loss of society. *Id.*

In this instance, in *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C.

2007), this Court awarded compensatory damages to Marine Orval Hunt and his wife. Their children were not claimants in that matter.

On January 20, 2010, Plaintiffs filed a motion requesting that "the Court enter an Order taking judicial notice of the factual findings articulated in the Court's May 30, 2003 opinion in the related case of *Peterson v. Iran*, Civil Action No. 01-2094 and "enter judgment liability against both Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security." The Court granted that motion on February 1, 2010.

In accordance with this directive and in conformity with the Federal Rules of Evidence, the Special Master makes the following findings and recommendations.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. Orval Hunt was born on May 2, 1951 and was a United States citizen.

2. On October 23, 1983, while Mr. Hunt was deployed to Lebanon, the Marine Barracks in Beirut was attacked by a suicide bomber who drove a truck carrying a large cache of explosives into the building.

3. According to the findings in *Peterson v. Islamic Republic of Iran,* 515 F.Supp. 2d 25 (2007), Mr. Hunt was injured as a result of the terrorist attack. His children testified that he passed away in 2007 from causes unrelated to the bombing.

### Testimony of Jack Hunt, Orval Hunt's Son

Jack Hunt is a pastor in Maryland and is married with four sons. Jack testified that he has three sisters, Mendy, Marcy and Molly. He was nine years old when his father was injured in the Beirut bombing.

Jack recalls that, on the morning of October 23, 1983, he was getting ready for church when he overheard a commotion coming from his mother and other people downstairs. When he

found his mother she instructed him to go outside and play.  Jack testified that when he returned home later that day, he learned about the bombing from news reports on television.

Jack testified that his father sustained a concussion, broken left femur and an exposed Achilles tendon from the bombing.  Apparently, his father had been sleeping on his right side when the bombing occurred, so he sustained injuries only to his left side.  He was, however, trapped in the rubble of the BLT for a day until he could be rescued.

It was only when Jack was 16 that his father fully recovered.  Jack testified that the Hunt family lost many friends as a result of who the bombing.  He recalls how the events of October 23 forever changed his life by forcing him to realize the fragility of life is and how quickly "things can go bad."  He recounted that after his father returned from Beirut there was "a lot of stress at home" because the Marine Corps was trying to medically retire his father.  Jack noted that his father suffered from pain for the rest of his life.  Orval Hunt passed away in 2007.

**Testimony of Mendy Hunt Radyshewsky**

Mendy Radyshewsky was ten years old when the bombing of October 23 took place.  She described her family as "normal" prior to the bombing.

Mendy testified that her parents did not provide her many details about her father's Beirut deployment.  She only remembers that he left much sooner than anticipated.  Mendy noted "[t]hey didn't really let us know that it was dangerous."  She testified that on the day of the bombing, the "phone rang and it woke me up and it was my grandmother."  Her mother turned on the television at once and they saw what was left of the Barracks building.  Mendy recalls her mother saying that her father "was probably dead."  A day or so later, a Marine Officer visited the Hunt household to inform them that Orval was, in fact, alive.

Mendy recalled that Orval received treatment in Germany for some time before he was transferred to the hospital in Bethesda, Maryland.  When Mendy first saw her father, she testified, although "he was very skinny and he looked frail," she was "happy" to see him.  Orval was "on crutches for a long time" and had to undergo "a lot of physical therapy."  She believes that, in some ways, Orval became a "better father" after being a party to the catastrophe.

Orval passed away in February 2007.  She noted that an autopsy performed on her father showed that Orval's lungs were filled with "gravelly stuff" consistent with being trapped under rubble.

### Testimony of Molly Fay Wald, Orval Hunt's Daughter

Molly Wald is Orval Hunt's daughter. She testified that she was born on August 16, 1980 and currently resides in Illinois.

Molly described her father as a devout Christian who "was kind of strict" and "very much a Marine" having enlisted joined the Marine Corps in 1969 to serve in Vietnam and re-enlisting after a four-year break because he "missed" the service.  She characterized her father as supportive and encouraging.  She recounted that her father was "in communications" during his second enlistment.

Molly was "very young" when her father deployed to Beirut.  She neither recalls her father deploying to Beirut nor the events October 23, 1983 in which she remembered only her mother standing on the back porch for "a long time."

She does not remember seeing her father for the first time when he returned from Beirut. While she "heard the general story" of what befell her father in Beirut, he never discussed it with her.  Molly knows he had "an exposed Achilles tendon, massive brain injuries, a fractured skull and one of his legs was shattered."

Molly believes that after the bombing, her father "tried harder to carry on with his life." She believed it "made him a stronger person and more faithful" although he would become depressed every year on the anniversary of the bombing.

**ANALYSIS**

Standard of Review

To recover damages, "a FSIA default winner must prove damages –in the same manner and to the same extent' as any other default winner." Hill v. Republic of Iraq, 328 F.3d 680, 684-85 (D.C.Cir. 2003) (citation omitted). Upon consideration of the facts presented and, in light of the aforementioned legal framework, the Special Master considers whether solatium damages are available for Orval Hunt's children - Jack Hunt, Mendy Radyshewsky and Molly Wald.

**Solatium**

Solatium damages are available to FSIA plaintiffs when extreme and outrageous conduct has caused grief and anguish to those closely related to and impacted by a victim of terrorism. 28 U.S.C. §1605A(c)(4). *See Flatow v. Islamic Republic of Iran,* 999 F.Supp. 1, 12-13 (D.D.C. 1998). Spouses and relatives in direct lineal relationships are presumed to suffer damages for mental anguish insofar as "acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror [.]" *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 89 (D.D.C. 2002).

Unlike a claim for lost wages, however, the amount to be awarded for the loss of solatium "cannot be defined through models and variable." *Flatow*, 999 F.Supp. at 32. Accordingly, courts look to previous awards for guidance. *See Jenco v. Islamic Republic of Iran,* 154 F.Supp.2d 27, 39-40 (D.D.C. 2001). *See also* Amended Administrative Plan Governing

Appointed Special Masters (directing that the Special Masters be "guided" in their decisions by the *Flatow*, *Eisenfeld* (*Eisenfeld v. Islamic Republic of Iran*, 172 F.Supp.2d 1 (2000)) and *Jenco* decisions).

As stated, the testimonial and documentary record before the Special Master amply demonstrate that Orval Hunt's physical and emotional trauma as a result of the bombing has had a permanent impact on his children. The general framework for compensatory awards for the parents, spouses, siblings and children of surviving victims of terrorist attacks has been established by the *Peterson* Court which opined that, "the appropriate amount of damages for family members of surviving servicemen are as follows: spouse ($4 million); parents ($2.5 million); children ($2.5 million); siblings ($1.25 million). *Id.* 515 F.Supp.2d at 52.

The record demonstrates that Orval Hunt's children were impacted by the events that took place on October 23, 1983. There is, however, nothing in the record before the Special Master compelling a finding of greater damages than those set forth in *Peterson*. For these reasons, the Special Master concludes, as a matter of law that the appropriate monetary compensation is as follows: Jack Hunt – Two Million Five Hundred Thousand Dollars ($2,500,000); Mendy Radyshewsky –Two Million Five Hundred Thousand Dollars ($2,500,000) and Molly Fay Wald Two Million –Five Hundred Thousand Dollars ($2,500,000).

Dated: July 13, 2011                                  Respectfully submitted,

                                                        /s/ Alan L. Balaran
                                                        Alan L. Balaran, Esq.
                                                        Special Master