UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CAROLYN DAVIS, et al.,                    )
                                          )
    Plaintiffs,                          )
                                          )
v.                                        )    Civil Action No.: 07-1302 (RCL)
                                          )
THE ISLAMIC REPUBLIC OF IRAN, et al.,     )
                                          )
    Defendants.                          )
_____)

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNT CCI**
**(Mother and Wife of Paul Rivers)**

This action is brought pursuant to 28 U.S.C. § 1605A by Bernice Rivers and Sandra Rivers, mother and wife of surviving Marine Paul Rivers.[1] Each seeks solatium damages for injuries sustained by Paul Rivers on October 23, 1983 as a result of the terrorist bombing at the United States Marine Barracks in Beirut, Lebanon. In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule of Civil Procedure 53, the Special Master has received both testimonial and documentary evidence with respect to damages from the witnesses identified below.

Background

Shortly after dawn on October 23, 1983, a Mercedes truck filled with 2,500 pounds of explosives broke through a series of steel fences and sandbag barricades and ripped through the heart of the Marinesø administrative headquarters building. That building, nicknamed the BLT, housed nearly 400 members of Battalion Landing Team 1/8 and attached Marines, sailors and soldiers. The explosion collapsed all four floors of the BLT, leaving a crater 30 feet deep and 40

---

[1] Paul Riversø sons, Jeremy and Paul are named as plaintiffs in the Complaint however counsel has advised that they are not participating in the lawsuit and as such no evidence was submitted to the Special Master on their behalf.

feet wide and killing 241 servicemen and wounding 81 others.  It represented the deadliest single-day death toll for the United States Marine Corps since the Battle of Iwo Jima and the deadliest single-day death toll for the United States military since January 21, 1968, the first day of the Tet Offensive during the Vietnam War.  The Beirut bombing remains the deadliest post-World War II attack on Americans overseas.

The events of that day and its aftermath have been amply documented and will not be repeated except as relevant to an assessment of individuated damages.  *See, e.g.*, Glenn E. Dolphin, 24 MAU 1983: A MARINE LOOKS BACK AT THE PEACEKEEPING MISSION TO BEIRUT, LEBANON (2005); Eric Hammel, THE ROOT: THE MARINES IN BEIRUT AUGUST 1982 ó FEBRUARY 1984 (1999).  Similarly, the historical overview of the statutory scheme by which claimants have brought actions against the Islamic Republic of Iran has been exhaustively recounted in numerous opinions issued by this and other Courts, most notably, *In re: Islamic Republic of Iran Terrorism Litigation*, 659 F.Supp.2d 31 (D.D.C. 2009), as well as in the U.S. Congressional Research Serviceøs SUITS AGAINST TERRORIST STATES BY VICTIMS OF TERRORISM (RL31258, August 8, 2008) by Jennifer Elsea, obviating the need for recapitulation.

Procedural History

This Court has repeatedly found defendants Islamic Republic of Iran and its Ministry of Information and Security legally responsible for providing material financial and logistical support to help carry out the attack on the servicemen in Beirut.  *See*, *e.g.*,*Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 110 (D.D.C. 2007); *Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46, 61 (D.D.C. 2003).  In these opinions, the Court also determined that the family members of those victimized by the bombing have suffered and will continue to suffer mental anguish and loss of society.  *Id.*

In this instance, in *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C.

2007), this Court awarded compensatory damages to Marine Paul Rivers. Paul Rivers' mother was not a claimant in that action and although his wife and sons were, their claims were dismissed as no evidence was presented on their behalf.

On January 20, 2010, Plaintiffs filed a motion requesting that "the Court enter an Order taking judicial notice of the factual findings articulated in the Court's May 30, 2003 opinion in the related case of *Peterson v. Iran*, Civil Action No. 01-2094 and enter judgment liability against both Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security." The Court granted that motion on February 1, 2010.

In accordance with this directive and in conformity with the Federal Rules of Evidence, the Special Master makes the following findings and recommendations.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

    1.    Paul Rivers was born on January 3, 1963 is a United States citizen.

    2.    On October 23, 1983, while Mr. Rivers was deployed to Lebanon, the Marine Barracks in Beirut was attacked by a suicide bomber who drove a truck carrying a large cache of explosives into the building.

    3.    According to the findings in *Peterson v. Islamic Republic of Iran,* 515 F.Supp. 2d 25 (2007), Mr. Rivers was injured as a result of the terrorist attack.

**Testimony of Bernice Rivers, Paul Rivers' Mother**

Bernice Rivers is a widow currently residing in New York. She testified that she has six children, including her son Paul. Mrs. Rivers testified that she is a United States citizen, as is her son, Paul. Paul enlisted in the Marine Corps in 1982, after graduating from high school in New York.

Mrs. Rivers testified that Paul attended boot camp at Camp Lejeune. She recounted that Paul enjoyed being in the Marine Corps and believes Paul intended to make a career in the service. Mrs. Rivers testified that she did not like the idea of Paul's deployment to Beirut. She noted that Paul "was a young man who was willing to go over there and do whatever he had to do for his country." Paul wrote home frequently and was able to speak to his mother on the telephone on only one occasion. Paul explained to her, "it is so hard to rest because there is so much gunfire. There are people constantly screaming out because of the gunfire." Mrs. Rivers recalled that Paul "was on patrol" while in Beirut but does not know exactly what his duties were.

Mrs. Rivers learned of the bombing from the television news. She recalled praying that it did not affect her son. She saw the building on the news and recalled that it might be the same building Paul was living in as it looked similar to a photograph Paul had sent home. Mrs. Rivers "called so many places to find out if he was involved in all of this." A few days after the bombing, she learned from the newspaper that Paul was "missing." "Four or five days" after the bombing "they came to the house" and she learned that Paul had been found and was on the USS Iwo Jima for transport to "a hospital in Germany."

The impact of the bombing on Mrs. Rivers "was a disaster." The entire family suffered as a result of the terrorist attack, particularly those five agonizing days when she did not know if Paul had survived.

She recalled that when Paul was transported back to the United States, he had a stopover in Washington, D.C. Mrs. Rivers and her other son tried to get a plane ticket to travel to meet Paul but were unable. They met him instead at Camp Lejeune. She testified that Paul "was scarred up" and he told her about hearing the screams of the victims of the bombing. "All of his

friends were gone." "It was very hard on him," Mrs. Rivers noted.  She recounted that Paul was buried for three days before being sent to a Lebanese hospital.  "He was hurt.  His back, his neck.  When someone is hurt like that you just don't want to keep question them over and over."

Mrs. Rivers testified that she accompanied her son to three different memorial services for the victims of the bombing. She noted that Paul "still has a hard time with it" and he has been unable to "move on."  Paul did eventually get married and had a family but "he still thinks of this stuff all over again," Mrs. Rivers testified, "it's still sometimes difficult for him to deal with it."  At her deposition Mrs. Rivers provided a newspaper clipping she had saved showing Paul on the USS Iwo Jima after his rescue.

**<u>Testimony of Sandra Rivers, Paul Rivers' Wife</u>**

Sandra Rivers testified that she is a United States citizen who currently resides in Maryland with her husband, Paul Rivers, whom she married on August 6, 1994.  The couple has two sons.  Sandra testified that since their marriage, Paul has obtained a Masters Degree in criminal justice.

She noted that Paul has scars on his back "and a huge lump on his head."  He has "a lot of headaches" and has undergone surgery on his knee.  Sandra testified that Paul "is very protective; very cautious, especially of our children."  Paul is friendly, "but reserved when it comes to his family."

Paul has discussed the bombing with Sandra at length.  She accompanied him to one memorial service but will not go again "because it was so hard to see Paul go through all of that."  Every year on the anniversary of the bombing, she and Paul will take the day off of work to attend mass at their local church and then try "to do something fun like go to the movies or

something." At the end of that day, Paul, who doesn't drink, will go out to their backyard and make a toast to his fallen comrades.

**ANALYSIS**

<u>Standard of Review</u>

To recover damages, "a FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 684-85 (D.C.Cir. 2003) (citation omitted). Upon consideration of the facts presented and, in light of the aforementioned legal framework, the Special Master considers whether solatium damages are available for Paul Rivers' mother, Bernice, and his wife, Sandra.

**Solatium**

Solatium damages are available to FSIA plaintiffs when extreme and outrageous conduct has caused grief and anguish to those closely related to and impacted by a victim of terrorism. 28 U.S.C. §1605A(c)(4). *See Flatow v. Islamic Republic of Iran,* 999 F.Supp. 1, 12-13 (D.D.C. 1998). Spouses and relatives in direct lineal relationships are presumed to suffer damages for mental anguish insofar as "acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror [.]" *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 89 (D.D.C. 2002).

Unlike a claim for lost wages, however, the amount to be awarded for the loss of solatium "cannot be defined through models and variable." *Flatow*, 999 F.Supp. at 32. Accordingly, courts look to previous awards for guidance. *See Jenco v. Islamic Republic of Iran,* 154 F.Supp.2d 27, 39-40 (D.D.C. 2001). *See also* Amended Administrative Plan Governing Appointed Special Masters (directing that the Special Masters be "guided" in their decisions by the *Flatow*, *Eisenfeld* and *Jenco* decisions).

As stated, the testimonial and documentary record before the Special Master amply demonstrate that Paul Rivers' physical and emotional trauma as a result of the bombing has had a permanent impact on his mother and wife. The general framework for compensatory awards for the parents, spouses, siblings and children of surviving victims of terrorist attacks has been established by the *Peterson* Court which opined that, "the appropriate amount of damages for family members of surviving servicemen are as follows: spouse ($4 million); parents ($2.5 million); children ($2.5 million); siblings ($1.25 million)." 515 F.Supp.2d at 52. However, this Court has held that "current spouses who were not yet married to an injured serviceman at the time of the attack are not considered 'immediate family' for the purposes of recovery. These individuals are therefore among the group of plaintiffs who cannot recover damages sustained as a result of the attack." *Id.* at 16, n. 21.

The record demonstrates that Paul Rivers' mother and wife were impacted by the events that took place on October 23, 1983. There is, however, nothing in the record before the Special Master compelling a finding of greater damages than those set forth in *Peterson*. For these reasons, the Special Master concludes, as a matter of law that the appropriate monetary compensation is as follows: Bernice Rivers – Two Million Five Hundred Thousand Dollars ($2,500,000). As noted above, Sandra Rivers was not married to Paul Rivers at the time of the bombing and as such she is not eligible for solatium damages.

Dated: July 30, 2011                                   Respectfully submitted,

/s/ Alan L. Balaran
Alan L. Balaran, Esq.
Special Master