UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CAROLYN DAVIS, et al.,                )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )    Civil Action No.: 07-1302 (RCL)
                                      )
THE ISLAMIC REPUBLIC OF IRAN, et al,  )
                                      )
    Defendants.                       )
_____)

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNT CXCI**
(Estate of Dorothy Williams)

      This action is brought pursuant to 28 U.S.C. § 1605A by the Estate of Dorothy Williams, seeking solatium damages for the wrongful death of her son, Marine Scipio Williams, Jr. on October 23, 1983 as a result of the bombing at the United States Marine Barracks in Beirut, Lebanon.  In accordance with the Order of Reference entered pursuant to Federal Rule of Civil Procedure 53, the Special Master has received both testimonial and documentary evidence relevant to an assessment of damages.

Background

      Shortly after dawn on October 23, 1983, a Mercedes truck filled with 2,500 pounds of explosives broke through a series of steel fences and sandbag barricades and ripped through the heart of the Marinesø administrative headquarters building.  That building, nicknamed the BLT, housed nearly 400 members of Battalion Landing Team 1/8 and attached Marines, sailors and soldiers. The explosion collapsed all four floors of the BLT, leaving a crater 30 feet deep and 40 feet wide and killing 241 servicemen and wounding 81 others.  It represented the deadliest single-day death toll for the United States Marine Corps since the Battle of Iwo Jima and the

deadliest single-day death toll for the United States military since January 21, 1968, the first day of the Tet Offensive during the Vietnam War.  The Beirut bombing remains the deadliest post-World War II attack on Americans overseas.

The events of that day and its aftermath have been amply documented and will not be repeated except as relevant to an assessment of individuated damages.  *See, e.g.*, Glenn E. Dolphin, 24 MAU 1983: A MARINE LOOKS BACK AT THE PEACEKEEPING MISSION TO BEIRUT, LEBANON (2005); Eric Hammel, THE ROOT: THE MARINES IN BEIRUT AUGUST 1982 – FEBRUARY 1984 (1999).  Similarly, the historical overview of the statutory scheme by which actions against the Islamic Republic of Iran have been brought has been exhaustively recounted in a recent opinion of this Court, *see In re: Islamic Republic of Iran Terrorism Litigation*, (659 F.Supp.2d 31 D.D.C. 2009), as well as in the U.S. Congressional Research Service's SUITS AGAINST TERRORIST STATES BY VICTIMS OF TERRORISM (RL31258, August 8, 2008) by Jennifer Elsea, obviating the need for recapitulation.

Procedural History

This Court has repeatedly found defendants Islamic Republic of Iran and its Ministry of Information and Security legally responsible for providing material financial and logistical support to help carry out the attack on the servicemen in Beirut.  *See*, *e.g.*,*Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 110 (D.D.C. 2007); *Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46, 61 (D.D.C. 2003).  The Court further determined that the surviving family members have suffered and will continue to suffer mental anguish and loss of society.  *Id.*  In *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007), this Court awarded damages to Scipio Williams' wife, children and siblings, including Erma Williams, for loss of accretions to his estate.  Dorothy Williams was not a claimant in that matter.  According to the death certificate, Dorothy Williams passed away in 1986.  A Certificate of Appointment

provided by counsel indicates that her daughter, Erma Williams Smith, is the representative of Dorothy Williams' estate.

On January 20, 2010, Plaintiffs filed a motion requesting that "the Court enter an Order taking judicial notice of the factual findings set forth in the decision of this Court dated May 30, 2003, in the related case of *Peterson v. Iran*, Civil Action No. 01-2094" and "enter judgment liability against both Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security."  The Court granted that motion on February 1, 2010.

In accordance with this directive and in keeping with the Federal Rules of Evidence, the Special Master makes the following findings and recommendations.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1.Scipio Williams, Jr. was born on May 23, 1947 and was a United States citizen.

2.On October 23, 1983, while Mr. Williams was deployed to Lebanon, the Marine Barracks in Beirut was attacked by a suicide bomber who drove a truck carrying a large cache of explosives into the building.

3.According to the Official DD1300 Report of Casualty, Mr. Williams died of injuries sustained as a direct result of the bombing.

**Testimony of Erma Williams Smith on behalf of the Estate of Dorothy Williams**

Erma Williams was born on October 17, 1957 to Dorothy Williams and Scipio Williams, Sr. and has five siblings including deceased Marine Scipio Williams, Jr.  She currently resides in South Carolina.  She provided testimony on behalf of the Estate of Dorothy Williams.

Erma testified that her father passed away at a very young age, leaving Dorothy Williams to raise five children.  Erma remembers her mother as "a loving woman" who was involved with her church and community.  Dorothy was not, however, "always a healthy one," and she suffered

her first stroke in 1971.  Erma recalled Dorothy and Scipio, Jr. being especially close, as he was her oldest son.

"When Scipio got killed it was the worst scream I have ever heard," Erma testified.  Erma ran into her mother's room and her mother explained that the Marine barracks in Beirut had been billeted had been blown up.  "It affected her very badly," Erma recalled, elaborating that the following day, Dorothy was admitted to the hospital where she remained for several weeks and was permitted to leave the hospital only to attend the funeral but returned immediately thereafter.  "She was never the same after he got killed. Never."

Erma testified that Dorothy's mother passed away in October 1983, days before the bombing and Dorothy was still grieving when she was learned of her son's death.  Three years later Dorothy lost another son in a tragic accident.  Erma explained that if not for the strength of Dorothy's faith, she might not have survived.  Erma noted that Dorothy "cried all of the time" after Scipio's death.

**ANALYSIS**

Standard of Review

To recover damages, "a FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 684-85 (D.C.Cir. 2003) (citation omitted).  Upon consideration of the facts presented and, in light of the aforementioned legal framework, the Special Master considers whether solatium damages are available for the Estate of Dorothy Williams.

**Solatium**

Solatium damages are available to FSIA plaintiffs when extreme and outrageous conduct has caused grief and anguish to plaintiffs closely related to a victim of terrorism.  28 U.S.C.

§1605A(c)(4).  *See also Flatow*, 999 F.Supp. at 29*; Surette v. Islamic Republic of Iran*, 231 F.Supp.2d 260, 269-70 (D.D.C. 2002).  Spouses and relatives in direct lineal relationships are presumed to suffer damages for mental anguish insofar as "acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror [.]"  *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 89 (D.D.C. 2002). Unlike a claim for lost wages which readily lends itself to calculation, the amount to be awarded for the loss of solatium "cannot be defined through models and variable."  *Flatow*, 999 F.Supp. at 32.  As such, courts confronted with these claims generally look to previous solatium awards for guidance.  *See Jenco*, 154 F.Supp.2d at 38.  *See also* Amended Administrative Plan Governing Appointed Special Masters (directing that the Special Masters be "guided" in their decisions by the *Flatow, Eisenfeld (v. Islamic Republic of Iran,* 172 F.Supp.2d 1 (D.D.C. 2000)) *and Jenco* decisions).

A review of these and other similar decisions reveals that other courts have awarded solatium damages ranging between $8 million and $12 million for pain and suffering resulting from the death of a spouse; approximately $5 million to parents; approximately $2.5 million to siblings; and approximately $3 million to the children of the deceased.  *See, e.g., Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 12  (D.D.C. 2009) (awarding $10 million to husband of  victim of suicide bombing who viewed wife's severely disabled body); *Greenbaum v. Islamic Republic of Iran*, 451 F.Supp.2d, 90, 108 (D.D.C. 2006) (awarding $9 million to husband of victim of terrorist attack); *Higgins v. Islamic Republic of Iran*, 2000 WL 33674311, *2-3 (D.D.C. September 21, 2000) (awarding $12 million to the wife and daughter of an Army colonel held hostage and tortured by Hizballah for 529 days before being executed); *Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 22 (D.D.C. 2002) (awarding $8 million to wife of victim

injured in terrorist bombing in Israel who suffered for 49 days with excruciating burn and blast injuries before succumbing to them); *Eisenfeld*, 172 F.Supp.2d at 8 (awarding $5 million each to the parents and $2.5 million each to the siblings of victims of a suicide bombing on a passenger bus); *Flatow*, 999 F.Supp. at 31 (awarding parents each $5 million and siblings each $2.5 million of a victim who was killed in a passenger bus bombing); and *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 301 (D.D.C. 2003) (awarding $3 million each to the children of a victim of a suicide bomber).

These are not artificial caps but guidelines designed to promote uniformity in an area not readily receptive to quantification. Considering that a solatium award is designed to offset the profound psychological devastation following the traumatic loss of a loved one, no bright-line rule can take account of the variety of evidence and contexts presented by these types of cases. The Special Master thus makes no attempt to solve this problem here in the abstract aside from utilizing those factors that have informed the courts' decisions in similar cases. On that score, the Special Master is mindful that "there is no exact comparison, and, indeed, strict application of precedent could lead to conflicting conclusions about an appropriate award," *Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43, 57 (D.D.C. 2009), and that awarding greater amounts may be proper in cases "with aggravating circumstances." *Greenbaum v. Islamic Republic of Iran*, 451 F.Supp.2d 90, 108 (D.D.C. 2006).

Indicators supporting an enhancement include: "[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence" or "[m]edical treatment for depression and related affective disorders." *Id.* at 31. Conversely, a downward departure may be imposed where the relationship between the claimant and the deceased is more attenuated.

*See, e.g., Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217, 236 (S.D.N.Y. 2003).

No evidence has been put before the Special Master urging a deviation in either direction. As noted above, Erma Williams Smith testified on behalf of her mother's estate in support of the claim for solatium damages. A Certificate of Appointment from the State of South Carolina indicates that Scipio Williams' mother, Dorothy passed away in 1986 and Erma Williams Smith is the Administrator of her estate. Ms. Smith's testimony, as a matter of law, is sufficient to sustain a claim for solatium, *Flatow*, 999F.Supp. 1 at 30 (citation omitted), as it clearly establishes that Dorothy Williams held her son in great regard and his loss had a devastating impact on her.

In light of the foregoing, the Special Master sees no reason to deviate from the award suggested by the court in *Flatow* and finds, as a matter of law, that $5,000,000 (Five Million Dollars) is the appropriate monetary compensation to be awarded to the Estate of Dorothy Williams.

Dated: July 31, 2011                                      Respectfully submitted,

                                                          /s/ Alan L. Balaran
                                                          Alan L. Balaran, Esq.
                                                          Special Master