UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
CAROLYN DAVIS, et al.,                )
                                      )
    Plaintiffs,                       )
                                      )
v.                                    )    Civil Action No.: 07-1302 (RCL)
                                      )
THE ISLAMIC REPUBLIC OF IRAN, et al,  )
                                      )
    Defendants.                       )
_____)

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNTS CLXXXIX**
(Timothy Price and the Estate of Betty Lou Price)

This action is brought pursuant to 28 U.S.C. § 1605A by Timothy Price and the Estate of Betty Lou Price, seeking solatium damages for the wrongful death of Marine James C. Price on October 23, 1983 as a result of the bombing at the United States Marine Barracks in Beirut, Lebanon. In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule of Civil Procedure 53, the Special Master has received both testimonial and documentary evidence relevant to an assessment of compensatory and other damages.

Background

Shortly after dawn on October 23, 1983, a Mercedes truck filled with 2,500 pounds of explosives broke through a series of steel fences and sandbag barricades and ripped through the heart of the Marinesø administrative headquarters building. That building, nicknamed the BLT, housed nearly 400 members of Battalion Landing Team 1/8 and attached Marines, sailors and soldiers. The explosion collapsed all four floors of the BLT, leaving a crater 30 feet deep and 40 feet wide and killing 241 servicemen and wounding 81 others. It represented the deadliest single-day death toll for the United States Marine Corps since the Battle of Iwo Jima and the

deadliest single-day death toll for the United States military since January 21, 1968, the first day of the Tet Offensive during the Vietnam War. The Beirut bombing remains the deadliest post-World War II attack on Americans overseas.

The events of that day and its aftermath have been amply documented and will not be repeated except as relevant to an assessment of individuated damages. *See, e.g.*, Glenn E. Dolphin, 24 MAU 1983: A MARINE LOOKS BACK AT THE PEACEKEEPING MISSION TO BEIRUT, LEBANON (2005); Eric Hammel, THE ROOT: THE MARINES IN BEIRUT AUGUST 1982 – FEBRUARY 1984 (1999). Similarly, the historical overview of the statutory scheme by which actions against the Islamic Republic of Iran have been brought has been exhaustively recounted in a recent opinion of this Court, *see In re: Islamic Republic of Iran Terrorism Litigation*, (659 F.Supp.2d 31 D.D.C. 2009), as well as in the U.S. Congressional Research Service's SUITS AGAINST TERRORIST STATES BY VICTIMS OF TERRORISM (RL31258, August 8, 2008) by Jennifer Elsea, obviating the need for recapitulation.

Procedural History

This Court has repeatedly found defendants Islamic Republic of Iran and its Ministry of Information and Security legally responsible for providing material financial and logistical support to help carry out the attack on the servicemen in Beirut. *See*, *e.g.*,*Valore v. Islamic Republic of Iran*, 478 F.Supp.2d 101, 110 (D.D.C. 2007); *Peterson v. Islamic Republic of Iran*, 264 F.Supp.2d 46, 61 (D.D.C. 2003). The Court further determined that the surviving family members have suffered and will continue to suffer mental anguish and loss of society. *Id.*

In *Peterson v. Islamic Republic of Iran*, 515 F. Supp. 2d 25 (D.D.C. 2007), this Court awarded damages to the Estate of James Price for loss of accretions to his estate. This Court also awarded solatium damages to James Price's father and other brother.

On January 20, 2010, Plaintiffs filed a motion requesting that "the Court enter an Order taking judicial notice of the factual findings set forth in the decision of this Court dated May 30, 2003, in the related case of *Peterson v. Iran*, Civil Action No. 01-2094" and "enter judgment liability against both Defendants, The Islamic Republic of Iran and the Iranian Ministry of Information and Security."  The Court granted that motion on February 1, 2010.

In accordance with this directive and in keeping with the Federal Rules of Evidence, the Special Master makes the following findings and recommendations.

**FINDINGS OF FACT AND CONCLUSIONS OF LAW**

1. James Price was born on December 8, 1962 and was a United States citizen.

2. On October 23, 1983, while James was deployed to Lebanon, the Marine Barracks in Beirut was attacked by a suicide bomber who drove a truck carrying a large cache of explosives into the building.

**3.** According to the Official DD1300 Report of Casualty, James died of injuries sustained as a result of the bombing.

**Testimony of Timothy Price, James Price's Brother**

Timothy Price testified that he is a jet engine mechanic residing in Texas.  He was born on October 12, 1957 and is the son of John and Betty Price and the brother of Joseph and James Price.  Timothy was five years older than his brother James.

Timothy testified he and James were close.  They enjoyed riding motorcycles together, among other activities.  When James died, Timothy felt "[i]t was like I lost not only my younger brother but my best friend."  He recalled James being a good student until high school "when he ended up dropping out and getting his GED."  He also remembers the day James enlisted in the

Marine Corps shortly after receiving his GED, carrying on a tradition whereby all of the men in his family joined the military at one time or another.

Timothy testified that James completed his training at boot camp at Paris Island. He thought James "was doing what he had to do" when he was deployed to Beirut. He knew that James "was close to getting out" and "had no objections" about the deployment. Timothy testified that he and James exchanged many letters while James was stationed in Beirut. He particularly recalled one letter where James explained that some of his friends had been killed by sniper fire.

Timothy was mowing the lawn on October 23, 1983 when he received a telephone call from the Casualty Reporting Office about his brother's death. Timothy was also in the military at that time. He left immediately for San Antonio to await the return of James' body from Beirut.

Following his brother's death, Timothy testified, "I have never been the same. I still can't talk about it." Timothy had planned on staying in the military, but after James' death "it wasn't the same anymore" and he left the service a few years after James' death.

Timothy also testified, although with extreme difficulty about James' relationship with their mother Betty Price, who passed away in 1999. Timothy remembers James and his mother being "very close."

**ANALYSIS**

<u>Standard of Review</u>

To recover damages, "a FSIA default winner must prove damages 'in the same manner and to the same extent' as any other default winner." *Hill v. Republic of Iraq*, 328 F.3d 680, 684-85 (D.C.Cir. 2003) (citation omitted). Upon consideration of the facts presented and, in

light of the aforementioned legal framework, the Special Master considers Timothy Price qualifies for an award of solatium damages.

## Solatium

Solatium damages are available to FSIA plaintiffs when extreme and outrageous conduct has caused grief and anguish to plaintiffs closely related to a victim of terrorism.  28 U.S.C. §1605A(c)(4).  *See also Flatow*, 999 F.Supp. at 29*; Surette v. Islamic Republic of Iran*, 231 F.Supp.2d 260, 269-70 (D.D.C. 2002).  Spouses and relatives in direct lineal relationships are presumed to suffer damages for mental anguish insofar as "acts of terrorism are by their very definition extreme and outrageous and intended to cause the highest degree of emotional distress, literally, terror [.]"  *Stethem v. Islamic Republic of Iran*, 201 F.Supp.2d 78, 89 (D.D.C. 2002). Unlike a claim for lost wages which readily lend themselves to quantification, an award of solatium damages "cannot be defined through models and variable."  *Flatow*, 999 F.Supp. at 32. Courts have therefore looked to previous solatium awards for guidance.  *See Jenco*, 154 F.Supp.2d at 38.  *See also* Amended Administrative Plan Governing Appointed Special Masters (directing that the Special Masters be "guided" in their decisions by the *Flatow, Eisenfeld and Jenco* decisions).

A review of these decisions and their progeny reveals that courts confronted with claims for solatium damages arising from terrorist activities have approved awards ranging between $8 million and $12 million for pain and suffering resulting from the death of a spouse; approximately $5 million to parents; approximately $2.5 million to siblings; and approximately $3 million to the children of the deceased.  *See, e.g., Belkin v. Islamic Republic of Iran*, 667 F.Supp.2d 8, 12  (D.D.C. 2009) (awarding $10 million to husband of victim of suicide bombing who viewed wife's severely disabled body); *Greenbaum v. Islamic Republic of Iran*, 451

F.Supp.2d, 90, 108 (D.D.C. 2006) (awarding $9 million to husband of victim of terrorist attack); *Higgins v. Islamic Republic of Iran*, 2000 WL 33674311, *2-3 (D.D.C. September 21, 2000) (awarding $12 million to the wife and daughter of an Army colonel held hostage and tortured by Hizballah for 529 days before being executed); *Weinstein v. Islamic Republic of Iran*, 184 F.Supp.2d 13, 22 (D.D.C. 2002) (awarding $8 million to wife of victim injured in terrorist bombing in Israel who suffered for 49 days with excruciating burn and blast injuries before succumbing to them); *Eisenfeld*, 172 F.Supp.2d at 8 (awarding $5 million each to the parents and $2.5 million each to the siblings of victims of a suicide bombing on a passenger bus); *Flatow*, 999 F.Supp. at 31 (awarding parents each $5 million and siblings each $2.5 million of a victim who was killed in a passenger bus bombing); and *Stern v. Islamic Republic of Iran*, 271 F.Supp.2d 286, 301 (D.D.C. 2003) (awarding $3 million each to the children of a victim of a suicide bomber).

These are not artificial caps but guidelines designed to promote uniformity in an area not readily receptive to quantification. Solatium awards are designed to offset the profound psychological devastation that follows the traumatic loss of a loved one. As such, no bright-line rule can take account of the variety of evidence and contexts presented by these types of cases. The Special Master thus makes no attempt to solve this problem here in the abstract aside from utilizing those factors that have informed the courts' decisions in similar cases and hopefully advance the clarity of this particular corner. On that score, the Special Master is mindful that "there is no exact comparison, and, indeed, strict application of precedent could lead to conflicting conclusions about an appropriate award," *Brewer v. Islamic Republic of Iran*, 664 F.Supp.2d 43, 57 (D.D.C. 2009), and that awarding greater amounts may be proper in cases

"with aggravating circumstances." *Greenbaum v. Islamic Republic of Iran*, 451 F.Supp.2d 90, 108 (D.D.C. 2006).

Indicators supporting an enhancement include: "[t]estimony which describes a general feeling of permanent loss or change caused by decedent's absence" or "[m]edical treatment for depression and related affective disorders." *Id.* at 31. Conversely, a downward departure may be imposed where the relationship between the claimant and the deceased is more attenuated. *See, e.g., Smith ex rel. Smith v. Islamic Emirate of Afghanistan*, 262 F.Supp.2d 217, 236 (S.D.N.Y. 2003).

Here, no evidence has been put forward urging a deviation in either direction. As noted above, Timothy Price testified on his own behalf in support of his for claim for solatium damages. He also testified on behalf of the Estate of Betty Lou Price and through counsel, provided Letters of Administration from the State of Alabama indicating that his brother, Joseph Price is the Administrator of her estate. Timothy's testimony, as a matter of law, is sufficient to sustain a claim for solatium, *Flatow*, 999F.Supp. 1 at 30 (citation omitted), as it clearly establishes that Timothy Price loved his brother deeply and that James' death had a considerable affect on Timothy and their mother.

In light of the foregoing, the Special Master sees no reason to deviate from the award given by the court in *Flatow* and finds, as a matter of law, that the following amount is appropriate monetary compensation for this element of damages: $2,500,000 (Two Million Five Hundred Thousand Dollars) to Timothy Price and $5,000,000 (Five Million Dollars) to the Estate of Betty Lou Price.

- 8 -

Dated:  July 31, 2011

Respectfully submitted,

/s/ Alan L. Balaran
Alan L. Balaran, Esq.
Special Master