# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Caroline Davis, et al.
        Plaintiffs

      v.                                     Civil No. 1:07-cv-01302
                                                  Judge Royce C. Lamberth

The Islamic Republic of Iran, et al.
        Defendants

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNTS XXI – XXIV**

**Edwards, Roy (Deceased)**

     In accordance with the Order of Reference entered pursuant to the provisions of Fed.R.Civ.P. 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as set forth below. This is an action for wrongful death resulting from an act of state sponsored terrorism on the part of the Defendants and their agents occurring on and prior to the 23rd day of October 1983 at the United States Marine Barracks in Beirut, Lebanon.

     The following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence and have been established by clear-and-convincing documentary evidence and testimony.

1. Roy Edwards was born on May 11, 1941 in the United States of America and was, as at birth, and so remained until his death, a citizen of the United States of America.

2. Cindy Colasanti has been duly appointed the personal representatives of the estate

of Roy Edwards, Decedent, for the purpose of this lawsuit.

3.  On October 23, 1983, the Decedent was a member of the United States Marine Corps having enlisted on February 27, 1960 and was stationed in Beirut, Lebanon.

4.  On October 23, 1983, the Marine Barracks building housing the Decedent's Marine Battalion in Beirut was attacked by a suicide bomber who was driving a truck that penetrated to the center of the building where the truck, which was carrying a large quantity of explosives, detonated, collapsing the building resulting in the deaths of 241 American personnel, including the Decedent.

5.  As a result of the explosion, Decedent, Roy Edwards, suffered severe injuries which resulted in his death.

6.  The official service death certificate (report of casualty), admitted as an official record and marked as exhibit "2" at the depositions held herein indicated that the death of the Decedent was due to a terrorist attack at Beirut, Lebanon on October 23, 1983.

7.  There is no evidence from which the Special Master can make a finding that the Decedent suffered bodily pain or suffering as a result of his injuries.

8.  As a result of the death of Roy Edwards, his estate suffered a loss of accretions to the estate which could have been expected to occur during the course of his anticipated life. The said losses are the subject of a report under oath from Dr. Jerome Paige and are supported by Dr. Paige's testimony given in this matter by videotape. The report and the supporting calculations have been reduced by Dr. Paige to present value in accordance with *District of Columbia V. Barritaeu*, 399 A. 2d 563 (D.C. App. 1979). Based upon the foregoing, the amount of loss to the estate is in the amount of **$839,224.00** as reduced to

present value.

9. As a result of the death of Roy Edwards, his family has suffered and will continue to suffer severe mental anguish and the loss of society. The testimony has clearly established that they have never recovered from the shock of their loss. The emotional trauma they sustained is permanent and significant.

### **CINDY COLSANTI**

Roy Edwards, the Decedent, was Cindy's father. Roy was always in good health. Roy had grown up poor in a family of five. He joined the Marine Corps after high school and his mother died shortly thereafter.

Cindy's mother worked a lot when she was growing up and Roy took care of Cindy and her sister. They liked to play Monopoly and Roy liked to be the banker. Roy would eat anything Cindy cooked and tell her it tasted good, and then ask for more. Cindy met her husband Robert through Roy as the two men worked together. At one point, Roy was working and staying at his job during the week and coming home on the weekends. He started bringing one of his friends – Robert – home with him, and Cindy eventually married that friend.

Cindy's husband Robert and Roy worked on cars and fished together. The family was always at Cindy's mom's house. They had a very close family and they talked every day. Cindy's parents had met in Jacksonville, Florida right after Roy graduated from basic training.

Cindy's father joined the Marine Corps in 1960.  He had completed high school prior to enlisting.  The Marine Corps was his life.  Roy was an instructor before he was stationed at Camp Geiger.  That was his last job before deployment.  Roy was a master sergeant when he was deployed.

Roy's family was concerned about his deployment, but hoped for the best.  Cindy's mother felt better when she was reading Roy's letters as Roy wrote every day from Beirut, stating that he was safe and that his family shouldn't worry about him.  Cindy still has those letters.  Roy was in Beirut for six or eight months.  Cindy's mother sent Roy packages and Roy shared the cookies he got with the other Marines.

On October 23, 1983, Cindy's family was living on base at Camp LeJeune.  Cindy's mother live four blocks over.  She called Cindy and said that the Battalion Landing Team Headquarters had been bombed.  She knew Roy had been stationed in the building and was worried that Roy was in the building when it was bombed.  Roy had said he was supposed to stay at the library in a recent letter.  Cindy's mother hoped that he had gone.  She watched the news coverage non-stop and kept repeating that she knew something had happened to Roy.

Several nights later, in the middle of the night, Cindy's mother called her and told her that the chaplain had come to her house and informed her that Roy had been killed.  The chaplain stayed until Cindy and her husband arrived.  It had taken four or five days to find and identify Roy's body.

In the aftermath, Cindy's mother lost about fifty pounds because she wasn't eating.  She wouldn't go anywhere and wouldn't do anything.  She never fully recovered.

**4**

After Roy's death in Beirut, Cindy's mother bought a glass case and kept Roy's ribbons, medals and letters, even his shoes in the case. Roy had medals from Vietnam and other places he served. He had at least one for valor and a Purple Heart as well.

Roy's death left a void in Cindy's life. She was very close with her father. Roy was also close with Cindy's kids. Cindy would call her father before her mother for advice. Roy was always there when Cindy needed him.

Cindy wants the people who perpetrated the bombing to know what they have done to the families of the injured and killed. They have taken a lot out of her family's life. She wishes her youngest child had had the opportunity to meet Roy, but the child did not and has no memories of him.

Cindy went to some of the early memorial services, but had to stop going because it was too hard. She couldn't stand to see the emotional effect they had on her mother. Her mother stopped going too, eventually. Sometimes they would go to the memorial at night.

Cindy's mother died eight years before the taking of the deposition. Cindy's mother had had several strokes and a number of seizures in her final years. She finally succumbed to congestive heart failure. Cindy's mother had commented a number of times after Roy's death that she just couldn't go on. Her health had not been the same since Roy was killed and she had a very hard time getting over his death. She seemed bitter and withdrawn. She was very lonely. She was at her best when she was around her children and grandchildren. Whenever there was a problem, she would talk about how Roy would have taken care of it. Cindy's parents are buried together at Arlington.

Cindy wants the terrorists to learn from this litigation that they can't do whatever they want and get away with it. They can't destroy families and hurt people. She hopes they learn a lesson.

Cindy still misses her father and wants the terrorists to know that they can't take back what they have done.

## ROBERT JOSEPH MICHAEL COLASANTI

Robert Joseph Michael Colasanti is the son-in-law of Decedent Roy Edwards. Robert met Decedent in 1971 or 1972 when they were stationed at Camp Geiger together. Robert married Roy's daughter in 1974.

Roy was a very serious Marine. He loved the Marine Corps and it was his life. Robert and Roy would go to each other to discuss problems they had on the job. Roy's subordinates could always rely on him to answer questions and to maintain discipline.

Roy was very outgoing with his family. He did lots of things with them. He and Robert fished and worked on cars together. Roy looked after Robert's sons, Sandy and Randy sometimes. They had barbeques frequently.

Robert was not apprehensive about Roy's being deployed to Beirut because it was a peacekeeping mission.

On October 23, 1983, Robert recalls the bombing. He remembers being upset because, Roy, a longtime friend of his, had been killed and his family was deeply affected. Robert still is unhappy about how Roy died. From Robert's experience, if someone spends thirty years in the Marine Corps, they will have experiences that bother

them, and this is one that bothers him.  The Marines went to Beirut on a peacekeeping mission.  They did not go to Beirut to participate in a war.

After the bombing, Robert, a two-tour veteran of Vietnam, would sit awake at night and visualize how the attack on the Battalion Landing Team Headquarters had happened.  Robert feels that his friend's death made him stronger by making him constantly prepared for events such as the bombing.

Robert hopes the terrorists realize how many families they have affected and how little they gained by undertaking the bombing.

Robert didn't view Roy as his father-in-law; he viewed Roy as his brother.  He had a unique bond with Roy.  That bond was even closer because they were both Marines.

## SEAN KIRSTEN COLASANTI

Sean is Robert and Cindy's son and Roy Edward's grandson.  Sean was born in San Diego, California.  Sean still remembers riding in his grandfather's car to go play basketball.  Sean recalls he was the only one who was allowed to sit in his grandfather's recliner.  He enjoyed spending time with his grandfather.

Sean doesn't remember much about the bombing.  He does remember watching television for days on end, watching the names of the killed and wounded scrolling down the screen.  Sean remembers seeing his grandfather's name on the screen.  Sean still thinks about that a lot.

Sean was his grandfather's favorite and Roy's death left a huge void in Sean's life. Sean doesn't know how to put into words how deeply the bombing affected his mother

7

and grandmother.  His grandmother used to lock the door to her house and not let anyone in for days on end.  He used to wonder what she was doing and if she was alright.  The time he did spend with his grandmother, he knew she had changed.

Sean hopes that someday there are no more terrorists.  He wishes his grandfather were still alive.  Sean wishes Roy could meet Sean's kids.

## CONCLUSIONS OF LAW

1.  Wrongful Death.

The Plaintiffs have provided comprehensive testimony from the expert, Dr. Jerome Paige, clearly detailing the loss of accretions to the estate of each person.  These calculations are detailed and supported by the evidence set forth in the report whose summary page is annexed to this report and have been established pursuant to sound guidelines without question.  The Special Master concludes as a matter of law that judgment should be entered for this element of damages for the estate of Roy Edwards in the amount of **$839,224.00**.

2.  Survival Action-Pain and Suffering.

There is no evidence from which the Special Master can conclude that the Decedent endured bodily pain and suffering after the attack and prior to his death because medical records for Roy Edwards detailing his injuries after the bombing could not be located.  Cindy Colasanti, Personal Representative of Roy Edwards' estate indicated that she wished to go ahead and have judgment entered without an award for pain and

suffering.

3.   Solatium

The Foreign Sovereign Immunities Act provides for an award for solatium consisting of emotional injury inflicted upon persons other than the Decedent by the actions of the Defendants and/or their agents. The Court in *Flatow v. Iran*, 999 F. Supp. 1 (D.D.C. 1998), stated that this is an item of damages which belongs to the individual heirs personally for the injuries to the feelings and the loss of the Decedent's comfort, support and society. The unexpected quality of death and its emotional impact may be taken into consideration in gauging the emotional impact to those left behind. In the present case, the impact upon the surviving family was profound and is permanent.

This court offered guidance in determining awards for solatium in these cases in *Valore v. Iran*, 03-cv-1959, 06-cv-516, 2010 U.S. Dist. LEXIS 31259, 84 (D.D.C. 2010). In accordance with that guidance the Special Master concludes as a matter of law that the following amounts are appropriate compensation:

Cindy Colasanti, the daughter of Decedent Roy Edwards, **$5,000,000.00**; and

The Estate of Barbara Edwards, wife of Decedent Roy Edwards, **$8,000,000.00**.

**TOTAL DAMAGES:**                              $13,839,224.00

November 29, 2011                                            s/s Paul G. Griffin
Date                                                         Paul G. Griffin, Esq.
                                                             Special Master