**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Caroline Davis, et al.
       Plaintiffs

    v.                                Civil No. 1:07-cv-01302
                                         Judge Royce C. Lamberth

The Islamic Republic of Iran, et al.
       Defendants

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNTS CXXX – CXXXIII**

**Rutter, Thomas**

      In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as set forth below.  This is an action for emotional damage resulting from an act of state-sponsored terrorism on the part of the Defendants and their agents occurring on and prior to the 23rd day of October 1983 at the Beirut, Lebanon United States Marine Barracks.

      The following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence and have been established by clear-and-convincing documentary evidence and testimony.

1. Thomas Rutter was born October 27, 1963 in the United States of America and has been at all times throughout his life a citizen of the United States of America.

2. On October 23, 1983, Thomas Rutter was a member of the United States Marine Corps,

having enlisted on August 30, 1981, and was stationed in Beirut, Lebanon.

   3.   On October 23, 1983, the Marine Barracks building housing the Marine Battalion in Beirut was attacked by a suicide bomber who was driving a truck which penetrated to the center of the building where the truck, which was carrying a large quantity of explosives, detonated, collapsing the building resulting in the deaths of 241 American personnel.

   4.   The following testimony clearly establishes that the victim has never recovered from the effects of the Marine Barracks Bombing on October 23, 1983.  The emotional trauma sustained by Thomas Rutter, is permanent and significant.

## TESTIMONY OF THOMAS RUTTER

Thomas grew up in a suburban household in Baltimore County, Maryland.  His childhood was normal.  Thomas was an average student in high school.  He joined the Marine Corps as soon as he graduated.  All he wanted to do growing up was be a Marine.  Thomas loved war movies growing up and wanted to be like his heroes.

Thomas was a rifleman in the Marine Corps.  He was moved to the Surveillance Target Acquisition ("STA" or "Scout/Sniper") Platoon because of his excellent marksmanship.  Thomas had not considered whether he wanted to make the Marine Corps a career at this point.  He was in excellent health and had no emotional problems, and was qualified for the Scout/Sniper unit.  He always scored highly on physical fitness tests.

Thomas's unit was on a six- or seven-month rotation to the Mediterranean on what were termed Med Floats.  Thomas was not apprehensive about going to Beirut.  His family did not follow events in the Middle East and were not scared for his safety either.

At first, the Marines didn't face hostility.  After the Israeli military withdrew in August of

1983, the militias returned to Beirut and begun attacking the Marines.  Sniper and mortar fire increased from August through October.  Thomas was in a forward reconnaissance position at the University with seven other Marines, manning it twenty-four hours a day while providing the headquarters situation reports and reporting observed activity.

Thomas was briefly pulled back to the battalion headquarters after a staff sergeant was killed on the airport road by a sniper.  Thomas wrote to his parents frequently when he was in Beirut.  In the last letter his parents received before the bombing, Thomas had told them he had been relocated to the battalion headquarters, the building that was blown up on October 23, 1983.  Thomas was almost immediately sent to the airport road from the headquarters with another sniper to eliminate the hostiles on the road.  He was there when the battalion headquarters was bombed.  After the bombing, Thomas was listed as missing in action and his parents didn't know he was alive for over a week.

On the morning of the bombing, Thomas and the other sniper were in position, looking across a field that was approximately 475 yards long with the city wall on the opposite side.  This position was a half-mile from the barracks, at the end of the runway.  The two Marines had been observing Hezbollah operatives going into a building known as the Danielle Cafe to gather weapons and drink coffee and then scatter along the city wall to fire on the Marine base from there.  The snipers were instructed to shoot anyone who pointed a weapon at them.  In one day, they had had five kills.  Their rules of engagement had changed frequently, but the Marines had had to call for permission to fire back before then.  By the time they would get permission, their targets would scatter.

Thomas was asleep in his tent. He was awakened by the explosion from the Marine barracks.  He got out of his tent and looked towards the barracks, but he couldn't see the

building, only smoke and dust.  There was yelling on the radio and the Marines stayed in position at the end of the runway.  They weren't sure whether they would get attacked again.  Over the course of the day, the Marines learned that the barracks had been blown up.

Thomas requested to go to the barracks, but the NCO in charge told him to remain on the line.  The next day, Thomas and another Marine were sent to the Barracks to aid in the rescue efforts.  Because STA Platoon was in the Headquarters and Service Company ("H&S"), Thomas was detailed to identify bodies.  He was also gathering ammunition and body parts that were scattered around the demolished barracks.  Before the sun set, Thomas had returned to his position at the north end of the runway.

The reactionary force flew in from Camp LeJeune to reinforce the Marines.  Most of the battalion leadership had been killed or severely wounded in the bombing.  Communications improved and the Marines received constant warnings about other possible bombs.  They were constantly worried about being bombed again.  Thomas tried not to let what he had seen affect him.  He tried to accomplish his mission.  He has tried to block out what he saw in Beirut for 25 years.

Thomas was in Beirut for another month after the bombing and arrived home before Christmas.  Thomas wanted desperately to get home and see his wife.  When he got home to Camp LeJeune around eleven at night, no one was around.  The Marine Corps tries to keep men with their companies when they return home.  Because Thomas was in H&S, there weren't many people with him.  Not many people in his company had survived.

Thomas has a 50% Post-Traumatic Stress Disorder (PTSD) rating from the VA as a result of his experiences in Beirut.  He has seen psychiatrists from the VA and a psychiatrist in private practice.  PTSD has, in part, been responsible for the dissolution of his marriages.  Thomas

doesn't have many friends. He doesn't go out much and doesn't like crowds. He prefers to stay home, alone.

Thomas would like to know why Iran sponsors terrorism and Hezbollah. He would like to know why the Iranians don't believe in self-determination. He believes that one day the Iranians will get what is coming to them.

## CONCLUSIONS OF LAW

1. Pain and Suffering.

The above testimony as well as other admitted evidence clearly indicates that Thomas Rutter suffered emotional injury as a result of the actions of the Islamic Republic of Iran and its agents. This court offered guidance in determining awards for pain and suffering in these cases in *Valore v. Iran*, 03-cv-1959, 06-cv-516, 2010 U.S. Dist. LEXIS 31259, 84 (D.D.C.). The Special Master concludes that Thomas Rutter is entitled to **$1,500,000** in compensatory damages due to the demonstrated injury caused in the Marine Barracks Bombing.


**TOTAL DAMAGES:**                                    **$1,500,000.00**

November 28, 2011                                     /s/ Paul G. Griffin
Date                                                  Paul G. Griffin, Esq.
                                                      Special Master