# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

Caroline Davis, et al.
       Plaintiffs

      v.                              Civil No. 1:07-cv-01302
                                          Judge Royce C. Lamberth

The Islamic Republic of Iran, et al.
       Defendants

### REPORT OF SPECIAL MASTER
### PURSUANT TO ORDER OF REFERENCE
### CONCERNING COUNT XXXIII – XXXVI

### Ingalls, John

In accordance with the Order of Reference entered pursuant to the provisions of Fed.R.Civ.P. 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as set forth below.  This is an action for wrongful death resulting from an act of state-sponsored terrorism on the part of the Defendants and their agents occurring on and prior to the 23rd day of October 1983 at the Beirut, Lebanon United States Marine Barracks.

The following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence and have been established by clear-and-convincing documentary evidence and testimony.

1.     John Ingalls was born March 6, 1964, in the United States of America and was at birth, and so remained until his death, a citizen of the United States of America.

2.     James Ingalls has been duly appointed the personal representatives of the estate of

John Ingalls, Decedent, for the purpose of this lawsuit.

3.     On October 23, 1983, the Decedent was a member of the United States Marines having enlisted on February 24,1982 and was stationed in Beirut, Lebanon.

4.     On October 23, 1983, the Marine Barracks building housing the Decedent's Marine Battalion in Beirut was attacked by a suicide bomber who was driving a truck that penetrated to the center of the building where the truck, which was carrying a large quantity of explosives, detonated, collapsing the building resulting in the deaths of 241 American personnel, including the Decedent.

5.     As a result of the explosion, Decedent, John Ingalls, suffered severe injuries which resulted in his death.

6.     The official service death certificate (report of casualty), admitted as an official record and marked as exhibit "2" at the depositions held herein indicated that the death of the Decedent was due to a terrorist attack at Beirut, Lebanon on October 23, 1983.

7.     There is no evidence from which the Special Master can make a finding that the Decedent suffered bodily pain or suffering as a result of his injuries.

8.     As a result of the death of John Ingalls, his estate suffered a loss of accretions to the estate which could have been expected to occur during the course of his anticipated life.  The said losses are the subject of a report under oath from Dr. Jerome Paige.  The report and the supporting calculations have been reduced by Dr. Paige to present value in accordance with *District of Columbia V. Barritaeu*, 399 A. 2d563(D.C. App. 1979). Based upon the foregoing, the amount of loss to the estate is in the amount of **$727,808.00** as reduced to present value.

9. As a result of the death of John Ingalls, his brothers, James and Joseph Ingalls, have suffered and will continue to suffer severe mental anguish and the loss of society. Their testimony has clearly established that they have never recovered from the shock of their loss. The emotional trauma they have sustained is permanent and significant.

### JOSEPH INGALLS

Joseph was born in 1965. James was born in 1961 and their brother John was born in 1964. Their father died in 2001 and their mother died in 2003.

The three boys were competitive. They played sports together. John wrestled and played football and basketball. John helped Joseph out. John was an A and B student in high school. John liked the industrial arts and enjoyed making things out of wood and metal. He liked working on cars. John joined the Marine Corps in 1982 after he graduated from high school. John liked helping people and wanted to make a difference in the world. He enjoyed the Marine Corps but he didn't like being so far from home. He was a combat engineer.

Joseph was sad to see his brother leave when he went to Beirut. Joseph thought John would be alright. He never thought anything like the bombing would happen. John felt a sense of duty and did not hesitate to go to Beirut, but he did seem concerned. He wrote every couple of weeks to his brothers and his grandparents. He also called occasionally. John wrote from Beirut about going on patrols and encountering Lebanese children. He also wrote that it was hot and dusty. He could hear explosions at night. John was in Beirut with his closest friends.

Joseph remembers returning home on the day of the bombing to see family members crying.  They told him about the bombing and that they didn't know whether John was dead or alive.  They didn't find out John had died in the bombing until four days later.  Joseph was at a friend's house when his family found out.  His friends took him home and there were a lot of cars around his parents' house.  Joseph knew something was wrong as everyone was in tears.  Joseph's parents bottled up their emotions and over the years, John's death took a lot out of them.

Joseph coped with his brother' death by drinking.  He lost his license twice and has been to Alcoholics Anonymous numerous times, sometimes by order of the court.  Joseph has missed out on his brother's encouragement over the years.  He would have had more self respect if his brother had been there to support him.  John's birthday and holidays are always tough times for Joseph.  He doesn't show his distress much outwardly.

Joseph is closer with his remaining brother, James, as a result of the bombing.  With his parents gone, he doesn't really talk to other family members much, though.

Joseph hopes this litigation makes the terrorists take responsibility for their actions and stop.  He hopes the world can be a happier place, free of terrorism.  Joseph likes thinking about how his brother was there for him and how he liked helping people.  He thinks his brother would have been successful at whatever he chose to do with his life.

## JAMES INGALLS

The Ingalls brothers grew up in New York State.  They were insulated from the rest of the world.  They went to the big city twice a year, once to go school shopping and

once to go to the dentist. They all stayed close to home and they had good childhoods. John was the middle child and the oddball of the family. He was popular and outspoken. The boys competed with one another. They always played outside. They liked sports and had hobbies like building mini bikes and tree houses. All three of the Ingalls brothers graduated from South Seneca High School. James hates to admit, but John was a little more popular and a better mechanic than he was.

John enlisted in the Marines during his senior year of high school. Why he picked the Marines was a mystery and a surprise to his family. James was living out of state at the time and found out through his parents his brother had enlisted. James was riding around the country on a motorcycle having fun. He thinks his father probably really liked that John was doing something with his life.

John liked the Marine Corps. James visited a friend from high school and John at Camp LeJeune shortly before John went to Lebanon. James was riding through that part of the country on his bike and wanted to see his brother. James didn't know where Lebanon was exactly. John and his friend liked the visit and James recalls one of the other Marines referring to John as a Marine's Marine. James watched his brother working out with the other Marines and he seemed to be having a great time.

John searched for minefields in the Marine Corps. He didn't talk about doing anything else. If he had done anything else, he would have been a mechanic or a welder. He got near perfect grades in shop class.

James recently came across John's letters to their parents. John wrote a lot about his relationship with his father. He was engaged when he went to Beirut and he wrote

5

about his fiancée. John was only months away from getting married. He was supposed to return from Beirut in less than a month when the bombing happened. John's departure from New York had been hard on his parents and the letters reflected that. James learned a lot about what happened in his family while he was away.

John described Beirut in his letters. It didn't seem like the Marines were concerned with being attacked and it seemed like they had a lot of free time.

James didn't know about the bombing until a couple of days after the bombing. He remembers seeing a newspaper at the lumber yard where he was working. The leading story was about the Marines' being attacked in Lebanon. Looking back, he feels naïve wondering if that was where John was. James didn't consider that his brother had been injured. A couple of days later, James's boss brought him into the office. James's father had called the lumber yard and told his boss that John was dead. James went right to the Denver airport and caught a flight home immediately.

When James got back to his parents' house, no one was talking. There was not much to be said. James's parents were very upset but not very angry, anger came later. James stayed for two weeks but felt as though he could have stayed for a month. James felt like he had to get back to his life a week after the funeral. He wanted his life to return to normal. James doesn't think his parents ever really recovered. He thinks a part of them died with John. Their anniversary was October 22nd, the day before the bombing.

James has tried to get on with his life and has grown to accept that John died in a tragedy that is likely to repeat itself. He believes this because he sees the same problems in government now that existed in 1983. He believes history is cyclical and terrorist acts

like the bombing will happen over and over because we are incapable of learning from history.  James has become cynical and callous as a result of the bombing.  James still thinks about the bombing from time to time.  He keeps pictures and knick knacks that remind him of John in his shop.  James thinks he got over his brother's death more so than the rest of his family because he was away from home when it happened.

James would like to think the Iranian government and whoever else is responsible would admit what they did and apologize.  He realizes that is unlikely to happen, given their current president and leadership, as well as the international political climate and Iran's nuclear ambitions.  He thinks Iran should stop being arrogant and try to get along with the rest of the world.  He thinks this is unlikely because countries in that part of the world are competing to be heard.  James thinks if he gets money out of this case, he would give most of it away.  He wouldn't feel better having the Iranian's money in his pocket.  He would feel better knowing that some of John's friends got a piece of it.  A couple of John's friends were deeply hurt by his death.  One in particular still can't talk about it.

If John had not been killed in Beirut, he would have gone a long way, in the Marines or as a civilian.  John would have accomplished a lot with his life.

## **CONCLUSIONS OF LAW**

1.       Wrongful Death.

The Plaintiffs have provided comprehensive testimony from the expert, Dr. Jerome Paige, clearly detailing the loss of accretions to the estate of each person.  These calculations are detailed and supported by the evidence set forth in the report whose

summary page is annexed to this report and have been established pursuant to sound guidelines without question. The Special Master concludes as a matter of law that judgment should be entered for this element of damages for the estate of John Ingalls in the amount of **$727,808.00**.

2.   Survival Action-Pain and Suffering.

There is no evidence from which the Special Master can conclude that the Decedent endured bodily pain and suffering after the attack and prior to his death.

3.   Solatium

The Foreign Sovereign Immunities Act provides for an award for solatium consisting of emotional injury inflicted upon persons other than the Decedent by the actions of the Defendants and/or their agents.

The Court in *Flatow v. Iran*, 999 F. Supp. 1 (D.D.C. 1998), stated that this is an item of damages which belongs to the individual heirs personally for the injuries to the feelings and the loss of the Decedent's comfort, support and society. The unexpected quality of death and its emotional impact may be taken into consideration in gauging the emotional impact to those left behind. In the present case, the impact upon the surviving family was profound and is permanent.

This court offered guidance in determining awards for solatium in these cases in *Valore v. Iran*, 03-cv-1959, 06-cv-516, 2010 U.S. Dist. LEXIS 31259, 84 (D.D.C. 2010)**.** In accordance with that guidance the Special Master concludes as a matter of law that Defendants are jointly and severally liable to:

James Ingalls, brother of Decedent, in the amount of **$2,500,000.00**; and

Joseph Ingalls, brother of Decedent, in the amount of **$2,500,000.00.**

**TOTAL DAMAGES:** <u>**$5,727,808.00**</u>

<u>November 29, 2011</u>                                   <u>/s/ Paul G. Griffin</u>
Date                                                                  Paul G. Griffin, Esq.
                                                                            Special Master