**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

Caroline Davis, et al.
           Plaintiffs

       v.                                      Civil No. 1:07-cv-01302
                                                     Judge Royce C. Lamberth

The Islamic Republic of Iran, et al.
           Defendants

**REPORT OF SPECIAL MASTER
PURSUANT TO ORDER OF REFERENCE
CONCERNING COUNTS CXCIX**

**Matthews, Burnham**

In accordance with the Order of Reference entered pursuant to the provisions of Federal Rule 53, the Special Master has received evidence with regard to all issues of compensatory damages from witnesses as set forth below.  This is an action for emotional damage resulting from an act of state-sponsored terrorism on the part of the Defendants and their agents occurring on and prior to October 23, 1983 at the United States Marine Barracks in Beirut, Lebanon.

The following findings of fact are based upon the sworn testimony and documents entered into evidence in accordance with the Federal Rules of Evidence and have been established by clear-and-convincing documentary evidence and testimony.

  1.  Burnham Matthews was born September 4, 1963, in the United States of America and has been at all times throughout his life a citizen of the United States of America.

  2.  On October 23, 1983, Mr. Matthews was a member of the United States Marine Corps, having enlisted on April 29, 1981, and was stationed in Beirut, Lebanon.

3.  On October 23, 1983, the Marine Barracks building housing the Marine Battalion in Beirut was attacked by a suicide bomber who was driving a truck that penetrated to the center of the building where the truck, which was carrying a large quantity of explosives, detonated, collapsing the building resulting in the deaths of 241 American personnel.

4.  This report deals with the solatium claims of Burnham Matthews's sons, Drew Matthews and Chadwick Matthews.  A special master report detailing Burnham Matthews's injuries is reported in *Peterson v. Islamic Republic of Iran*, 1:01-cv-02094 RCL (D.D.C. 2007), and comprised counts DXXXVI – DXXXIX of that action.

5.  The following testimony clearly establishes that Drew and Chadwick Matthews have suffered permanent and significant emotional trauma as a result of the terrorist bombing of the Marine Barracks in Beirut in 1983.

## CHADWICK MATTHEWS

Chadwick Matthews is the son of Burnham Matthews.  Chadwick was born on March 6, 1987.  His parents, Joan and Burnham, were married when he was born in Twenty Nine Palms, California.  He is a high school graduate and a member of the United States Coast Guard.

Chadwick's father, Burnham, was born in Texas.  Burnham told Chadwick stories about his time in the Marine Corps when Chadwick was a young child.  Chadwick remembers his father being deployed when he was a kid, but he also remembers his parents having fights and his father leaving the house for a couple of days at a time.

Chadwick's mother told him that his father was injured in Beirut when he was a young child.  Chadwick's family didn't discuss Burnham's problems when he was younger, but his mother told him that his father had problems as a result of the bombing.  Looking back,

Chadwick believes his father had Post Traumatic Stress Disorder and he would like to think that it caused his father's behavior. Burnham's emotional problems kept him from having a relationship with his children. When Chadwick was thirteen, his father sent him a letter saying that he would not talk to Chadwick anymore. They did not talk again until Chadwick was an adult.

Chadwick really did not have a relationship with his father until recently. His father only recently told him what happened in Beirut. Burnham was blown out of a third story window in the bombing and landed outside. He had a broken leg, an injured ear, and a chunk of concrete lodged in his forehead. He had to carry the wounded to the medical tent. Burnham had trouble going into detail about the bombing because he was crying too hard. Burnham talked about his roommate, who had been smashed into a wall by the blast. Chadwick didn't want to pry because his father was already very upset.

Chadwick tried to find things to read about the bombing, but the articles he found were topical and didn't give him a detailed account of what had happened there.

Chadwick joined the Coast Guard because his role models had always been in the military. His father joked with him that he should join the Marines but once they started talking again, Chadwick was already in the process of joining the Coast Guard.

Chadwick's brother, Drew, is younger and had an even more strained relationship with their father. Drew spent even less time with their father. He doesn't have many memories of their father.

Chadwick would like to ask the terrorists who bombed the barracks why they did it?

## DREW MATTHEWS

Drew Matthews is the son of Burnham Matthews. Drew was born in August of 1989. Drew remembers his childhood as being rough in the beginning. He didn't see his father for a long period of time. Burnham is angry and upset about the bombing to this day. He has expressed feelings of hatred against Muslims. Burnham has been violent at times. Drew believes his father's behavior and views are the result of the bombing and the trauma from it.

Drew asked his father about the bombing when he was eight-years old. His father told him that a man drove a truck bomb into the Marine Barracks in Beirut and he had to go to a Navy ship for medical treatment. Burnham didn't like to talk about the bombing though. He would only talk about it when Drew asked.

Drew has heard that his father has had trouble at work as a result of the bombing and has had trouble keeping a job. His mother has told him that his father was a different person before the bombing.

It was hard for Drew to grow up without his father there. He felt angry and abandoned. Drew hopes this litigation makes his life and the lives of his family members easier.

## CONCLUSIONS OF LAW

1.      Solatium

The Foreign Sovereign Immunities Act provides for an award for solatium consisting of emotional injury inflicted upon persons other than the victim by the actions of the Defendants and/or their agents. The Court in *Flatow v. Iran*, 999 F. Supp. 1 (D.D.C. 1998) stated that this is an item of damages which belongs to the individual family members personally for the injuries to the feelings and the loss of the victim's comfort, support, and society. The unexpected type of

injury and its emotional impact may be taken into consideration in gauging the emotional impact to those family members. In the present case, the impact upon the family was profound and is permanent.

This court offered guidance in determining awards for solatium in these cases in *Valore v. Iran*, 03-cv-1959, 06-cv-516, 2010 U.S. Dist. LEXIS 31259, 84 (D.D.C. 2010).

However, the Court has yet to examine the standing of children born after the date of the bombing and who have brought solatium or intentional infliction of emotional distress claims against the Defendants under the terrorism exception to foreign sovereign immunity, 28 U.S.C. §1605A. Issues relating to Plaintiffs' standing in litigation arising out of the terrorist bombing of the Marine Barracks go back to this Court's opinion dismissing those plaintiffs who were domiciled in Pennsylvania and Louisiana. *See Peterson v. Islamic Republic of Iran*, 515 F.Supp.2d 25 (D.D.C. 2007) [hereinafter *Peterson II*]. Those Plaintiffs' claims were dismissed because no state law cause of action was available under the predecessor statute, 28 U.S.C. §1605(a)(7). *Id*.

Prior to the passage of 28 USC 1605A (and subsequent to the Court of Appeals' decisions in *Acree v. Iraq*, 370 F.3d 41, 361 U.S. App. D.C. 410 (2004) and *Ciccippio-Puleo v. Iran* 353 F.3d 1024; 359 U.S. App. D.C. 299 (2004, this Court was constrained to apply state law causes of action to those cases brought under the terrorism exception to the Foreign Sovereign Immunities Act. *Peterson II*. The forerunner of §1605A, 1605(a)(7), provided only the jurisdiction to sue a foreign nation. *Id*. Under this rubric, the Court looked to the restatement of torts and state law to fashion causes of action under which plaintiffs could collect. *In re Terrorism Litigation*, 659 F.Supp. 2d 31, 96 (D.D.C. 2009).

Even so, the court recognized an almost universal exception to the presence requirement in intentional infliction of emotional distress claims where state law left any ambiguity. *Jenco v. Islamic Republic of Iran*, 154 F.Supp. 2d 27, 36 (2001 D.D.C.). The Court did this because the Defendants' conduct was "sufficiently outrageous and intended to inflict severe emotional harm" on the plaintiffs. *Id*.

Relying in disparate state law causes of action resulted in inconsistent results. *In re Terrorism Litigation*, 659 F.Supp. 2d at 96. Congress sought to remedy this disparity by enacting a federal cause of action, which removed reliance on state law causes of action and the "pass-through" problem. *Gates v. Syrian Arab Republic*, 580 F.Supp. 2d 53 (2008). The new statute did not stop there, however. Where, previously, non-adoptive step parents had been dismissed from suits under 1605(a)(7), they had standing to sue under the new statute, 28 U.S.C. §1605A. Compare *Peterson II* with *Heiser v. Islamic Republic of Iran*, 659 F.Supp. 2d 20 (D.D.C. 2009). Thus, §46 of the Second Restatement of Torts ceased to bound the limitations of intentional infliction of emotional distress. Where previously, 28 U.S.C. §1606 placed severe limits on the scope of causes of action under the old statute, this Court noted that it is doubtful that §1606 continues to have this effect:

> In cautioning against the use of federal common law, the Court of Appeals in *Bettis* relied heavily on § 1606 of the FSIA. That provision provides in relevant part: "As to any claim for relief with respect to which a foreign state is not entitled to immunity under section 1605 or section 1607 of this chapter, the foreign state shall be liable in the same manner and to the same extent as a private individual under like circumstances." The Court reasoned that § 1606 "in effect instructs federal judges to find relevant law, not to make it." 315 F.3d at 333. At this juncture, however, it is unclear whether § 1606 should even apply in cases that rely on the new federal cause of action in § 1605A. For starters, § 1606 by its plain terms applies only to sections § 1605 and § 1607 of the FSIA. Moreover, § 1606 conflicts with § 1605A because it provides that punitive damages are not available in actions against foreign states, whereas § 1605A expressly authorizes punitive damages in cases against state sponsors of terrorism. Notably, Congress did not make any changes or updates to § 1606 when it repealed § 1605(a)(7) in

6

> the 2008 NDAA, and yet Congress did include a lengthy list of "Conforming Amendments" in § 1083(b) to ensure that both § 1605A and other reforms relating to terrorism actions, such as § 1610(g), were properly integrated into the larger statutory scheme of the FSIA. Thus, this Court can reasonably infer that Congress' failure to update § 1606 to include a reference to § 1605A evinces Congress intent that those standards pertaining to the scope of foreign state liability in § 1606 do not apply in actions against state sponsors of terrorism under § 1605A.

*In re Terrorism Litigation*, 659 F.Supp. 2d 31, n.20 (D.D.C. 2009).

Here, the Special Master can draw no distinction between the life lived by the children here – who were born after the date of the bombing – and those children who were born before the bombing and who were too young to have remembered the incident themselves. All the children of survivors were clearly denied an attentive father who was capable of meeting their emotional needs – that is, all were equally damaged by the terrorist attack. The actions of the Defendants were of such a nature that their effect continued beyond the immediacy of the October 1983 bombing.

Given those facts, and consistent with §1605A and the reasoning in the *Jenco* opinion, the Special Master finds that children born after the date of the bombing have the same standing to assert a claim for intentional infliction of emotional distress or solatium as those children born before the bombing.

Accordingly, the Special Master concludes as a matter of law that Defendants are jointly and severally liable to Plaintiffs in the following amounts:

Chadwick Matthews, son of Burnham Matthews, **$2,500,000.00**; and

Drew Matthews, son of Burnham Matthews, **$2,500,000.00**.

**TOTAL DAMAGES:**                                                                        **$5,000,000.00**

<u>March 6, 2012</u>                                                                              s/s Paul G. Griffin
Date                                                                                              Paul G. Griffin, Esq.
                                                                                                  Special Master