UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| CAROLYN DAVIS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 07-cv-1302 (RCL) |
| ISLAMIC REPUBLIC OF IRAN, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

**I.     Introduction**

This action arises out of the devastating 1983 bombing of the U.S. Marine barracks in Beirut, Lebanon.  The attack decimated the facility, killed 241 U.S. servicemen and left countless others wounded.  Various affected servicemen and family members now bring suit against defendants Islamic Republic of Iran ("Iran") and the Iranian Ministry of Information and Security ("MOIS").  Their action is brought pursuant to the state-sponsored exception to the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1602 et seq., which was enacted as part of the National Defense Authorization Act for Fiscal Year 2008 ("NDAA").  Pub. L. No. 110-181, § 1083, 122 Stat. 3, 338–44 (2008).  That provision, codified at 28 U.S.C. § 1605A, provides "a federal right of action against foreign states" that sponsor terrorist acts.  *Haim v. Islamic Republic of Iran*, 784 F. Supp. 2d 1, 4 (D.D.C. 2011) (quoting reference omitted).

**II.    Liability**

On February 1, 2010, this Court took judicial notice of the findings of fact and conclusions of law in *Peterson v. Islamic Republic of Iran* and *Boulos v. Islamic Republic of Iran*, which also concern the Marine barracks bombing, and entered judgment in favor of the plaintiffs and against Iran and MOIS with respect to all issues of liability.  *Davis v. Islamic Republic of Iran*, No. 1:07-cv-01302-RCL, ECF No. 27 (D.D.C. Feb. 2, 2010).  This Court then referred this action to a special master for consideration of plaintiffs' claims for damages  *Id.*, ECF No. 29.  Since the issue of liability has been previously settled, this Court now turns to examine the damages recommended by the special master.

### III.     Damages

Damages available under the FSIA-created cause of action "include economic damages, solatium, pain and suffering, and punitive damages."  28 U.S.C. § 1605A(c).  Accordingly, those who survived the attack may recover damages for their pain and suffering, as well as any other economic losses caused by their injuries; estates of those who did not survive can recover economic losses stemming from wrongful death of the decedent; family members can recover solatium for their emotional injury; and all plaintiffs can recover punitive damages.  *Valore v. Islamic Republic of Iran*, 700 F. Supp. 2d 52, 82–83 (D.D.C. 2010).

"To obtain damages against defendants in an FSIA action, the plaintiff must prove that the consequences of the defendants' conduct were 'reasonably certain (i.e., more likely than not) to occur, and must prove the amount of the damages by a reasonable estimate consistent with this [Circuit's] application of the American rule on damages.'"  *Salazar v. Islamic Republic of Iran*, 370 F. Supp. 2d 105, 115–16 (D.D.C. 2005) (quoting *Hill v. Republic of Iraq*, 328 F.3d 680, 681 (D.C. Cir. 2003) (internal quotations omitted)).  As discussed in *Peterson II*, plaintiffs have proven that the defendants' commission of acts of extrajudicial killing and provision of material

support and resources for such killing was reasonably certain to—and indeed intended to—cause injury to plaintiffs. *Peterson v. Islamic Republic of Iran (Peterson II)*, 515 F. Supp. 2d 25, 37 (2007).

The Court hereby ADOPTS, just as it did in *Peterson II*, *Valore*, *Bland*, *Anderson*, and *O'Brien* all facts found by and recommendations made by the special master relating to the damages suffered by all plaintiffs in this case. *Id.* at 52–53; *Valore*, 700 F. Supp. at 84–87; *Bland v. Islamic Republic of Iran*, No. 1:05-cv-2124-RCL (D.D.C. Dec. 21, 2011), 2011 WL 6396527; *Anderson v. Islamic Republic of Iran*, No. 1:08-cv-535-RCL (D.D.C. Mar. 20, 2012), 2012 WL 928256; *O'Brien v. Islamic Republic of Iran*, No. 1:06-cv-690-RCL (D.D.C. Mar. 28, 2012), 2012 WL 1021471. However, if the special master has deviated from the damages framework that this Court has applied in previous cases, "those amounts shall be altered so as to conform with the respective award amounts set forth" in the framework. *Peterson II*, 515 F. Supp. 2d at 52–53. The final damages awarded to each plaintiff are contained in the table located within the separate Order and Judgment issued this date, and this Court discusses below any alterations it makes to the special master recommendations.

### A.   Pain and Suffering of Survivors

Assessing appropriate damages for physical injury or mental disability can depend upon a myriad of factors, such as "the severity of the pain immediately following the injury, the length of hospitalization, and the extent of the impairment that will remain with the victim for the rest of his or her life." *Peterson II*, 515 F. Supp. 2d at 25 n.26 (citing *Blais v. Islamic Republic of Iran*, 459 F. Supp. 2d 40, 59 (D.D.C. 2006)). In *Peterson II*, this Court adopted a general procedure for the calculation of damages that begins with the baseline assumption that persons suffering substantial injuries in terrorist attacks are entitled to $5 million in compensatory

3

damages. *Id*. at 54.  In applying this general approach, this Court has explained that it will "depart upward from this baseline to $7–$12 million in more severe instances of physical and psychological pain, such as where victims suffered relatively more numerous and severe injuries, were rendered quadripeligic, partially lost vision and hearing, or were mistaken for dead," *Valore*, 700 F. Supp. 2d at 84, and will "depart downward to $2–$3 million where victims suffered only minor shrapnel injuries or minor injury from small-arms fire," *id*.  The Court typically awards $1 million to servicemen who survive a few minutes to a few hours after the bombing.  *See Elahi v. Islamic Republic of Iran*, 124 F. Supp. 2d 97, 113 (D.C. 2000).  However, "i[f] death was instantaneous there can be no recovery . . . ." *Id.* at 112 (citation omitted).  When a serviceman suffers severe emotional injury without physical injury, this Court has typically awarded the victim $1.5 million.  *See Valore*, 700 F. Supp. 2d at 85; *Bland*, 2011 WL 6396527 at *3.

Again, this Court ADOPTS all of special master awards for pain and suffering unless otherwise discussed below:

The special master recommends a $5 million pain and suffering award for serviceman Gary Wayne Allison.  Report of Special Master Concerning Counts LIII–LVI [ECF No. 76], at 9.  Mr. Allison suffered hearing loss and severe PTSD as a result of the bombing.  *Id.* at 7.  In light of the less severe nature of his physical injuries, while not ignoring his severe emotional injuries, the Court finds a more appropriate pain and suffering award to be $2 million.

The special master recommends a $5 million pain and suffering award for serviceman John W. Nash.  Report of Special Master Concerning Counts CXII–CXVI [ECF No. 109], at 31.  Mr. Nash was "covered in cuts and bruises by the blast, and coated in gray dust and debris from the building, but [was] otherwise unharmed." *Id.* at 7.  In light of the less severe nature of his

4

physical injuries, while not ignoring his severe emotional injuries, the Court finds a more appropriate pain and suffering award to be $2 million.

The special master recommends a $3 million pain and suffering award for serviceman Charles Simmons.  Report of Special Master Concerning Count CLII–CLV [ECF No. 40], at 10.  Mr. Simmons was "asleep in his tent with several other motor pool staff at the time of the bombing." *Id.* at 5.  While the record reflects that Mr. Simmons suffered severe emotional injuries, it does not reflect that he suffered any physical injury, and therefore the Court finds a more appropriate pain and suffering award to be $1.5 million.

The special master recommends a $5 million pain and suffering award for serviceman Thomas Andrew Walsh.  Report of Special Master Concerning Counts CLXV–CLXIX [ECF No. 105], at 19.  Mr. Walsh suffered hearing loss and severe PTSD as a result of the bombing. *Id.* at 5–6.  In light of the less severe nature of his physical injuries, while not ignoring his severe emotional injuries, the Court finds a more appropriate pain and suffering award to be $2 million.

The special master recommends a $5 million pain and suffering award for serviceman Gerald Wilkes, Jr.  Report of Special Master Concerning Counts CLXXV–CLXXIX [ECF No. 112], at 11.  While the record reflects that Mr. Wilkes suffered severe emotional injuries, it does not contain any medical evidence that he suffered physical injury, and therefore the Court finds a more appropriate pain and suffering award to be $1.5 million.

The special master recommends a $2 million pain and suffering award for serviceman Michael Corrigan.  Report of Special Master Concerning Counts LXX–LXXII [ECF No. 38], at 10.  Mr. Corrigan was stationed on the USS Iowa Jima at the time of the attack, but participated extensively in the rescue operations. *Id.* at 4.  He later received a 70% VA disability rating. *Id.* at 7.  While the record reflects that Mr. Corrigan suffered severe emotional injuries, it does not

reflect that he suffered any physical injury, and therefore the Court finds a more appropriate pain and suffering award to be $1.5 million.

### B.  Economic Loss

In addition to pain and suffering, several plaintiffs who survived the attack and the estates of several survivors have proven to the satisfaction of the special master, and thus to the satisfaction of the Court, lost wages resulting from permanent and debilitating injuries suffered in the attack or loss of accretions to the estate resulting from the wrongful death of decedents in the attack.  *See Valore*, 700 F. Supp. 2d at 85.  The Court therefore ADOPTS without modification the damages awarded for economic loss recommended by the special master.

### C.  Solatium

This Court developed a standardized approach for FSIA intentional infliction of emotional distress, or solatium, claims in *Heiser v. Islamic Republic of Iran*, where it surveyed past awards in the context of deceased victims of terrorism to determine that, based on averages, "[s]pouses typically receive greater damage awards than parents [or children], who, in turn, typically receive greater awards than siblings."  466 F. Supp. 2d 229, 269 (2006).  Relying upon the average awards, the *Heiser* Court articulated a framework in which spouses of deceased victims were awarded approximately $8 million, while parents received $5 million and siblings received $2.5 million.  *Id.*; *see also Valore*, 700 F. Supp. 2d at 85 (observing that courts have "adopted the framework set forth in *Heiser* as 'an appropriate measure of damages for the family members of victims'") (quoting *Peterson II*, 515 F. Supp. 2d at 51).  As this Court recently explained, in the context of distress resulting from injury to loved ones—rather than death—courts have applied a framework where "awards are 'valued at half of the awards to family members of the deceased'—$4 million, $2.5 million and $1.25 million to spouses, parents, and

6

siblings, respectively." *Oveissi v. Islamic Republic of Iran*, 768 F. Supp. 2d 16, 26 n.10 (D.D.C. 2011) (quoting *Valore*, 700 F. Supp. 2d at 85); *see also Bland*, 2011 WL 6396527, at *4–5. Children of a deceased victim typically receive an award of $3 million, while children of a surviving victim receive $1.5 million. *O'Brien*, 2012 WL 1021471, at *2; *Anderson*, 2012 WL 928256, at *2; *Bland*, 2011 WL 6396527, at *4; *Stern v. Islamic Republic of Iran*, 271 F. Supp. 2d 286, 301 (D.D.C. 2003).

In applying this framework, however, courts must be wary that "[t]hese numbers . . . are not set in stone," *Murphy v. Islamic Republic of Iran*, 740 F. Supp. 2d 51, 79 (D.D.C. 2010), and that deviations may be warranted when, *inter alia*, "evidence establish[es] an especially close relationship between the plaintiff and decedent, particularly in comparison to the normal interactions to be expected given the familial relationship; medical proof of severe pain, grief or suffering on behalf of the claimant [is presented]; and circumstances surrounding the terrorist attack [rendered] the suffering particularly more acute or agonizing." *Oveissi*, 768 F. Supp. 2d at 26–27.

This Court ADOPTS all of the facts found and recommendations made by the special master concerning solatium awards unless otherwise discussed below:

### 1. After-Born Children of Surviving Servicemen

The Restatement (Second) of Torts § 46 has traditionally guided this Court in deciding who has standing to recover solatium damages in FSIA § 1605A cases. *See Heiser v. Islamic Republic of Iran (Heiser II)*, 659 F. Supp. 2d 20, 26 (D.D.C. 2009) (Lamberth, C.J.); *Valore*, 700 F. Supp. 2d at 79; *Valencia v. Islamic Republic of Iran*, 774 F. Supp. 2d 1, 14 (D.D.C. 2010) (Lamberth, C.J.); *Reed v. Islamic Republic of Iran*, No. 03-cv-2657 (D.D.C. Feb. 28, 2012) (Urbina, J.), 2012 WL 639139 at *6 n.4. Restatement § 46 states that

7

> (1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.
>
> (2) Where such conduct is directed at a third person, the actor is subject to liability if he intentionally or recklessly causes severe emotional distress
>
>> (a) to a member of such person's immediate family who is present at the time, whether or not such distress results in bodily harm, or
>>
>> (b) to any other person who is present at the time, if such distress results in bodily harm.

In the terrorism context, this Court has strictly interpreted § 46(2)(a)'s "immediate family" requirement while loosely interpreting its "presence" requirement. *Valore*, 700 F. Supp. 2d at 79–80; *Heiser II*, 659 F. Supp. 2d at 28–29. Thus, nieces, nephews, uncles, aunts, non-adoptive stepparents, and non-adoptive stepchildren generally may not collect solatium damages under FSIA § 1605A. *Valore*, 700 F. Supp. 2d at 79. By contrast, this Court has allowed those who are "functional equivalent of immediate family members" to receive solatium awards. *Id.*

This Court has not yet specifically considered whether FSIA § 1605A(c) allows surviving servicemen's children born after the date of the bombing—October 23, 1983—to collect solatium awards (referred to by the special master and this Court as "after-born children"). The special master found that Iran's actions "were of such a nature that their effect continued beyond the immediacy of the October 1983 bombing." Report of Special Master Concerning Counts CXCVIII, [ECF No. 116], at 10. Therefore, the special master recommends solatium awards for various plaintiffs who are after-born children.

While this Court agrees with the special master that the bombing's impact on the surviving servicemen and their families continued long after the attack, Restatement § 46 requires that the bombing be "*directed at* a third person." (emphasis added). It is true that "a

8

terrorist attack—by its nature—is directed not only at the victim but also at the victims' families." *Heiser*, 659 F. Supp. 2d at 27 (quoting *Salazar*, 370 F. Supp. 2d at 115). However, the special master goes too far in assuming that the attack was "directed at" both the family members then-alive—who may clearly recover—while also being "directed at" unborn family members, a potentially unlimited class. This class of after-born plaintiffs eligible to recover could remain open for decades after a terrorist attack. For example, under the special master's interpretation, children born in 2012—almost 30 years after the bombing—could be eligible for solatium awards. Congress did not intend for FSIA § 1605A(c) to create such an expansive and indefinite scope of liability. As this Court has noted, "[s]ome lines must be drawn." *Heiser*, 659 F. Supp. 2d at 27. In light of this Court's strict interpretation of the "immediate family" requirement, as well as Restatement § 46's "directed at" requirement, this Court holds that a plaintiff bringing an action under § 1605A must have been alive at the time of the attack in order to collect solatium damages.

Therefore, the following after-born children plaintiffs are DISMISSED: Marvin Albright, Jr., Shateria Albright, Mark E. Bartholomew, Michelle Burnette, Evan Burnette, Christopher Eaves, India Eaves, Joseph Matthew Garner, Justina Nicole Garner, Reva Paige Garner, Estate of Chadwick Matthews, Drew Matthews, Abigail Elizabeth Santos, Alexandra Elizabeth Santos, Cooper Jeffrey Santos, Libbi Elizabeth Santos, Lilli Elizabeth Santos, Gerald Wilkes III, Justin Wilkes, Joshua Wilkes, and Elizabeth M. Struble.

2. **Solatium Awards Exceeding Pain and Suffering Awards**

In *Bland* and *O'Brien* this Court held that it is inappropriate for the solatium awards of family members to exceed the pain and suffering awards of the surviving servicemen. *Bland*, 2011 WL 6396527, at *5; *O'Brien*, 2012 WL 1021471, at *3. In those cases, the servicemen

received $1.5 million pain and suffering awards. *Id.* The Court reduced the awards of the family members in rough proportion to the *Heiser* framework to: $1 million for spouses, $850,000 for parents, $750,000 for children, and $500,000 for siblings. *Id.* Therefore, following *Bland* and *O'Brien*, this Court will proportionally reduce the awards of Teresa Bartholomew, Crystal Bartholomew, Jerry Bartholomew, Joyce Bartholomew, Toledo Dudley, Sherry Latoz, Cynthia Blankenship, Ginger Tuton, Scott Dudley, David Eaves, Sylvia Eaves, Jane Costa, Estate of Ann Hollis, John Westrick, Patricia Westrick, Whitney R. Westrick, Gerald Wilkes, Sr., Estate of Peggy Wilkes, and Sue Zilka.

Two family groupings deserve further discussion. The special master recommends a $5 million pain and suffering award for serviceman John W. Nash. Report of Special Master Concerning Counts CXII–CXVI [ECF No. 109], at 31. Mr. Nash was "covered in cuts and bruises by the blast, and coated in gray dust and debris from the building, but [was] otherwise unharmed." *Id.* at 7. In light of the less severe nature of his physical injuries, while not ignoring his severe emotional injuries, the Court reduced his pain and suffering award to $2 million. *See supra* Part III.A. Therefore, John's parents, Rose Ann Nash and the Estate of Frank E. Nash, will receive reduced awards of $1 million each, and his siblings, William H. Nash, Mark S. Nash, Frank E. Nash, Jr., Jaklyn Milliken, and Rosemarie Vilet, will receive reduced awards of $650,000 each.

Second, the special master recommends a $5 million pain and suffering award for serviceman Thomas Andrew Walsh. Report of Special Master Concerning Counts CLXV–CLXIX [ECF No. 105], at 19. Mr. Walsh suffered hearing loss and severe PTSD as a result of the bombing. *Id.* at 5–6. In light of the less severe nature of his physical injuries, while not ignoring his severe emotional injuries, the Court reduced his pain and suffering award to $2

million. *See supra* Part III.A.  Therefore, his parents, Charles Walsh and Ruth Walsh, will receive reduced awards of $1 million each, and his siblings, Pat Campbell, Rachel Walsh, Timothy Walsh, Michael Walsh, and the Estate of Sean Walsh, will receive reduced awards of $650,000 each.

### 3. Corrections

In a number of situations, the special master indicates no intent to depart from this Court's established damages framework, but nonetheless recommends awards inconsistent with the framework.  Therefore, the Court will correct the following awards to conform them to this Court's past damages awards:

Mecot Echo Camara, child of decedent, $5,000,000 award reduced to $3,000,000;

Dale and Tommy Comes, siblings of survivor, $2,500,000 award reduced to $1,250,000;

Susan Baker, child of decedent, $5,000,000 award reduced to $3,000,000;

Regina Periera, child of decedent, $5,000,000 award reduced to $3,000,000;

Cindy Colasanti, child of decedent, $5,000,000 award reduced to $3,000,000;

Jack Darrell Hunt, child of survivor, $2,500,000 award reduced to $1,500,000;

Mendy Leight Hunt, child of survivor, $2,500,000 award reduced to $1,500,000;

Molly Fay Hunt, child of survivor, $2,500,000 award reduced to $1,500,000;

Jacqueline Gibson, child of survivor, $2,500,000 award reduced to $1,500,000;

Samantha Stowe, child of decedent, $5,000,000 award reduced to $3,000,000;

Henry Townsend, Sr., father of decedent, $8,000,000 award reduced to $5,000,000;

Lillian Townsend, mother of decedent, $8,000,000 award reduced to $5,000,000;

Kawanna Duncan, child of decedent, $5,000,000 award reduced to $3,000,000.

Additionally, the Court DISMISSES the claims of Tracy Ann Santos, Sandra Rivers and Sylvia Eaves because they were not married to the servicemen at the time of the attack and therefore do not qualify as "immediate family" for the purposes of recovery. *Peterson II*, 515 F. Supp. 2d at 46 n.21; *Bland*, 2011 WL 6396527, at *4.

### D.     Punitive Damages

In assessing punitive damages, this Court has observed that any award must balance the concern that "[r]ecurrent awards in case after case arising out of the same facts can financially cripple a defendant, over-punishing the same conduct through repeated awards with little deterrent effect . . . .," *Murphy*, 740 F. Supp. 2d at 81, against the need to continue to deter "the brutal actions of defendants in planning, supporting and aiding the execution of [terrorist attacks]," *Rimkus v. Islamic Republic of Iran*, 750 F. Supp. 2d 163, 184 (D.D.C. 2010). To accomplish this goal, this Court—relying on the Supreme Court's opinion in *Philip Morris USA v. Williams*, 549 U.S. 346 (2007)—held that the calculation of punitive damages in subsequent related actions should be directly tied to the ratio of punitive to compensatory damages set forth in earlier cases. *Murphy*, 740 F. Supp. 2d at 81–82. Thus, in *Murphy* this Court applied the ratio of $3.44 established in *Valore*—an earlier FSIA case arising out of the Beirut bombing. *Id*. at 82-83 (citing *Valore*, 700 F. Supp. 2d at 52); *see also Bland*, 2011 WL 6396527, at *6. Here, the Court will again apply this same $3.44 ratio, which has been established as the standard ratio applicable to cases arising out of the Beirut bombing. Application of this ratio results in a total punitive damages award of $1,674,997,937.

### IV.    CONCLUSION

In closing, the Court applauds plaintiffs' persistent efforts to hold Iran and MOIS accountable for their support of terrorism. The Court concludes that defendants Iran and MOIS

must be punished to the fullest extent legally possible for the bombing in Beirut on October 23, 1983.  This horrific and cowardly act impacted countless individuals and their families, many of whom receive awards in this lawsuit.  This Court hopes that the victims and their families may find some measure of solace from this Court's final judgment.  For the reasons set forth above, the Court finds that defendants are responsible for plaintiffs' injuries and thus liable under the FSIA's state-sponsored terrorism exception for $486,918,005 in compensatory damages and $1,674,997,937 in punitive damages, for a total award of $2,161,915,942.

A separate Order and Judgment consistent with these findings shall be entered this date.

SO ORDERED.

Signed by Chief Judge Royce C. Lamberth on March 30, 2012.